UNITED STATES of America, Plaintiff–Appellee Cross–Appellant,

v.

Bruce PATTERSON, Defendant–Appellant Cross–Appellee.

No. 91–1377.

United States Court of Appeals, Fifth Circuit.

May 21, 1992.

David G. Hill, Maurie L. White, Oxford, Miss., for defendant-appellant cross-appellee.

Thomas W. Dawson, Paul D. Roberts, Asst. U.S. Attys., Robert Q. Whitwell, U.S. Atty., Oxford, Miss., for plaintiff-appellee cross-appellant.

Before KING, JOHNSON, and DAVIS, Circuit Judges.

JOHNSON, Circuit Judge:

Bruce Patterson was convicted by a jury on seven counts of illegal activities involving stolen vehicles. He appeals, contending that the evidence was insufficient as to four of the counts and that the district court erred in sentencing him. The Government cross-appeals, also raising an issue involving the federal sentencing guidelines.

## I. Facts and Procedural History

As the result of an undercover sting operation, Bruce Patterson was arrested and indicted on seven counts of illegal activities involving stolen motor vehicles. Count 1 alleged that Bruce Patterson had entered into a continuing conspiracy with his brother Robert Patterson to receive stolen vehicles in interstate commerce, to alter or remove vehicle identification numbers (VINs), to buy and sell motor vehicles and parts knowing the VINs had been removed or altered, and to obtain money by false pretenses, all in violation of 18 U.S.C. §§ 371, 511, 659, 1341, 1343, 2313, and 2321.

Count 2 alleged that Robert and Bruce Patterson, aiding and abetting each other in violation of 18 U.S.C. §§ 2 and 511, had altered or removed the VIN on a 1986 Chevrolet Silverado that had been stolen in

the fall of 1987. This vehicle was recovered by police during a search of an automobile workshop owned by Robert Patterson.[1]

Count 3 charged the Pattersons with possession of goods stolen while part of an interstate shipment, in violation of 18 U.S.C. § 659. In particular, the Pattersons were charged with possession of a red Mack truck which had been stolen in October 1987 while being shipped from Pennsylvania to Texas. This truck was found concealed in Robert Patterson's barn.[2]

Count 4 also charged a violation 18 U.S.C. § 659, possession of goods stolen while part of an interstate shipment—namely, a white Mack truck which also was stolen in October 1987 while being shipped from Pennsylvania to Texas. This truck was recovered when Bruce Patterson caused it to be delivered from a storage facility that he had leased to an undercover informant.

Count 5 alleged that Bruce Patterson, aided and abetted by his brother, had violated 18 U.S.C. §§ 2 and 511 by altering or removing the VIN of a 1986 CJ–7 Jeep which had been stolen in May 1988.

Count 6 charged the Pattersons with receiving and possessing a 1981 Chevrolet dual wheel truck which had been stolen in Arkansas in February 1989 and then transported across state lines, a violation of 18 U.S.C. §§ 2 and 2113. This vehicle was recovered during the search of Robert Patterson's workshop.

Finally, Count 7 alleged a violation of 18 U.S.C. §§ 2 and 511, in that the Pattersons had altered or removed the VIN of a 1987 Silverado pickup truck which was stolen by Robert Patterson with the collusion of the owner of the truck. This vehicle was also recovered during the search of Robert Patterson's workshop.

A jury convicted Bruce Patterson on all seven counts. He was sentenced to 40 months in prison on each of the counts, all of the sentences to be served concurrently. Although the district court did not impose a fine, it did order Patterson to pay a $350 special assessment and to make restitution to his victims. On appeal, Patterson does not contest the validity of his convictions on counts 1, 4, and 5. He concedes that the evidence was sufficient as to each of those. He argues, however, that the evidence was not sufficient to convict him on counts 2, 3, 6, and 7. Further, he contends that the district court erred in calculating his sentence under the federal sentencing guidelines. The Government has cross-appealed, raising an issue of its own with respect to the calculation of Patterson's sentence.

## II. Discussion

### A. *Sufficiency of the Evidence Against Bruce Patterson*

◼ Given the variety of illegal activities alleged in the indictment, it is helpful to begin by narrowing the evidentiary issues before the Court. First, as noted above, Patterson concedes that the evidence was sufficient to convict him on counts 1, 4, and 5. Second, on those counts which Patterson does challenge his convictions—counts 2, 3, 6, and 7—it is important to recognize that there is no evidence in the record that Bruce Patterson personally participated in stealing those vehicles, transporting them across state lines, or altering their VINs. Additionally, it must be noted that the vehicle involved in count 3 was seized in Robert Patterson's barn, and there is no suggestion that Bruce Patterson owned or controlled that barn. Similarly, the vehicles involved in counts 2, 6, and 7 were all seized at the workshop owned by Robert Patterson. The Government contends, and Bruce Patterson disputes, that Bruce also owned or controlled that shop. Indeed, the

---

**1.** As noted below, the parties disagree as to whether the evidence was sufficient to show that Bruce Patterson also owned or controlled the workshop where this vehicle (and others) were found. For the sake of convenience, this shop will be referred to here as Robert Patterson's workshop.

**2.** Robert Patterson's barn is *not* the same structure as the workshop referred to in footnote 1. The Government does not allege that Bruce Patterson had any ownership interest in or control over Robert Patterson's barn.

Government repeatedly characterizes that shop as "the Patterson shop," implying that it belonged to both Bruce and Robert. Unfortunately for the Government, however, the evidence does not appear to be sufficient to support such an implication.

The testimony about the disputed workshop showed 1) that ten to twelve years before the criminal activity alleged in the indictment, Robert and Bruce, along with other members of the community, had both contributed material and labor to the building of the shop; 2) that the shop was used by several members of the surrounding community in the early 1980s to work on farm equipment; 3) that Bruce had a separate shop of his own, on his own land, near his own house, where he works on his own equipment; and 4) that the shop in question is generally known in the community as Robert's shop. In addition, the investigating officers testified that they had no knowledge that Bruce owned or controlled the shop. One witness—a local wildlife conservation officer—testified that he had seen Bruce at the shop on one occasion sometime in the last few years. On that occasion Bruce and Robert were working on a piece of farm equipment outside the shop. The shop was closed, and there were no other vehicles in sight. In sum, the only evidence to suggest that Bruce Patterson owned or controlled the shop was that he had helped to build it ten or twelve years before and that he had been seen there once in the last few years. This evidence is plainly insufficient—despite the deferential standard of review[3]—to support a finding that Bruce Patterson exercised any continuing dominion or control over the workshop where the vehicles were seized.

Perhaps because the evidence linking Bruce Patterson to his brother's shop was so attenuated, at trial the Government argued that Bruce Patterson should be held liable on counts 2, 3, 6, and 7 on two other theories: either 1) that Bruce be held directly liable for the acts alleged in those counts because, although it was his brother who had actually engaged in the illegal activity, Bruce had aided and abetted his brother in that activity, or, 2) that Bruce should be held vicariously liable for the acts of his brother, because he and his brother had entered a conspiracy and the acts were undertaken by his brother in furtherance of that conspiracy. Bruce disputes both theories. On appeal the Government pursues only the second theory—apparently, it has abandoned the aiding and abetting theory. Thus, the precise question before the Court is whether Bruce can be held liable on counts 2, 3, 6, and 7 on the grounds that the illegal activity alleged in those counts was undertaken in furtherance of a conspiracy which Bruce had joined.

Bruce concedes that the evidence was sufficient to convict him of conspiring with his brother. He contends, however, that his vicarious liability for the acts of his brother extends only as far as the conspiracy itself, and that the acts alleged in counts 2, 3, 6, and 7 were no part of the conspiracy between Bruce and his brother. Bruce is certainly correct on the first point. A conspirator is liable only for those actions of his co-conspirators which are taken in furtherance of the conspiracy and which are within the scope of the illegal agreement. Once a defendant has been found to be a member of a conspiracy,

> he can also be convicted of [a] substantive offense based upon acts committed by a co-conspirator in furtherance of the conspiracy as long as the acts fall within the scope of the conspiracy and could reasonably be foreseen as a necessary or natural consequence of the unlawful agreement.

*United States v. Tilton*, 610 F.2d 302, 309 (5th Cir.1980). Thus, the question becomes whether the acts alleged in counts 2, 3, 6, and 7 were within the scope of the conspiracy between Bruce and Robert.

The Government argues—and count 1 of the indictment charges—that Bruce and

---

**3.** "When reviewing claims that the evidence is insufficient to support a conviction as a matter of law, this Court is obliged to view the evidence, whether direct or circumstantial, and all inferences reasonably drawn from it, in the light most favorable to the verdict." *United States v. Molinar–Apodaca*, 889 F.2d 1417, 1423 (5th Cir.1989).

Robert were partners in an on-going scheme, from September 1987 through May 1990, to acquire, alter, and resell stolen vehicles and parts, and that the activities alleged in counts 2, 3, 6, and 7 were part of that enterprise. Bruce argues that no such continuing conspiracy existed and that he had absolutely nothing to do with the vehicles involved in counts 2, 3, 6, and 7. At most, he argues, the Government proved that he and his brother entered a limited, discrete conspiracy to alter and sell the white Mack truck identified in count 4. Having reviewed the record, this Court concludes that the evidence, viewed in the light most favorable to the Government, was sufficient to support an inference that Robert and Bruce Patterson had been engaged in an on-going conspiracy to acquire, alter, and resell stolen vehicles and parts.

Several items of evidence could support the finding by the jury that there was a continuing conspiracy between Bruce and Robert. In particular, the jury could have relied on all of the following evidence to find that Robert and Bruce were engaged in an on-going enterprise to obtain, alter, and resell stolen vehicles: 1) the red and white Mack trucks were part of the same shipment in interstate commerce and were stolen at the same time; 2) Robert had possession of the red Mack truck and Bruce had possession of the white Mack truck; 3) Robert obtained and disassembled a stolen Freightliner truck which he then delivered to an undercover informant in Bruce's presence; 4) Bruce told the undercover informant that the only person who helps him convert stolen vehicles is Robert because Robert was the only person he trusted; 5) Robert, Bruce, and the undercover informant agreed to transport the white Mack truck from Bruce's storage facility to the undercover informant's house; 6) Bruce told the undercover informant that Bruce had a "world of parts," that he would help the undercover informant "fix" a Jeep, and that he had "fixed a dozen [Jeeps]"; 7) Robert told the undercover informant that Bruce was difficult to work with because Bruce always wanted the best of the stolen vehicles; 8) Bruce told the undercover informant that Bruce

had a set of stamps which Bruce could use to alter VINs, and one stamp found at Robert's shop matched a digit in a stolen Jeep recovered from Bruce; 9) Bruce admitted that the stamps were his and that he knew they were at Robert's shop; 10) Bruce implicated himself in schemes to defraud insurance companies in conversations with the undercover informant; 11) two of the vehicles seized had been purchased from the same salvage dealer and that salvage dealer knew Bruce and Robert and had dealt with them for some years in buying and selling wrecked vehicles; and 12) Bruce explained to the undercover informant how he forged fictitious titles in order to protect against charges that the vehicles were stolen.

> Patterson reminds the court that
>
> [m]ere knowledge of the purpose of the conspiracy or association with conspirators without an agreement to cooperate in the crime is not sufficient to make one a conspirator. The requisite fact of intentional agreement or participation cannot "be made out by piling inference upon inference," or by "suspicion and innuendo."

*United States v. Aguiar*, 610 F.2d 1296, 1303–04 (5th Cir.), *cert. denied*, 449 U.S. 827, 101 S.Ct. 91, 66 L.Ed.2d 31 (1980) (citations omitted). Patterson strenuously protests that he cannot be convicted on the basis that his brother was engaged in a criminal enterprise. The problem with Patterson's argument is that the evidence clearly showed that both Bruce and his brother had been engaged in criminal activity, and that they cooperated with one another in carrying out their activities. From the evidence presented, the jury could rationally have concluded that Bruce and Robert worked together on a continuing basis, and such a conclusion would allow the jury to convict Bruce on each of the seven counts alleged.

B. *Calculating Patterson's Sentence Under the Sentencing Guidelines*

1. The Number of Vehicles Involved

■ When calculating Bruce Patterson's sentence, the district court determined Pat-

terson's offense level on the basis of the aggregate value of eight vehicles. Two of the vehicles were the Freightliner truck and the red Mack truck identified in count 1 of the indictment; the other six vehicles were the vehicles identified in counts 2 through 7. Patterson argues 1) that if his convictions on counts 2, 3, 6, and 7 are reversed, then he must be resentenced without reference to the vehicles in those counts, and 2) that even if his convictions on counts 2, 3, 6, and 7 are not reversed, that it nonetheless was error to consider the value of the Freightliner and the red Mack truck in calculating his sentence. Patterson's first argument clearly must fail: the evidence was sufficient to support a finding that Bruce and Robert were engaged in an on-going criminal conspiracy, and was sufficient to support his convictions on all seven counts. Accordingly, there was no error in including the vehicles identified in counts 2, 3, 6, and 7.

There also was no error in basing Patterson's sentence on all of the vehicles involved in the conspiracy, including the Freightliner and the red Mack truck. The sentencing guidelines state that a defendant's base offense level shall be determined on the basis of "all acts and omissions committed or aided and abetted by the defendant, or for which the defendant would be otherwise accountable...." U.S.S.G. § 1B1.3(a)(1). The Commentary to this section explains that

> [i]n the case of criminal activity undertaken in concert with others, whether or not charged as a conspiracy, the conduct for which the defendant 'would be otherwise accountable' also includes conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.

U.S.S.G. § 1B1.3, Commentary n. 1. The rule is well settled in drug distribution cases that as long as the total amount of drugs to be distributed by a conspiracy is forseeable by an individual conspirator, that conspirator is to be sentenced on the basis of the total amount of drugs distributed by the conspiracy, not just the amount distributed by that individual conspirator.

*See, e.g., United States v. Giraldo–Lara,* 919 F.2d 19, 21 (5th Cir.1990) (defendant convicted of participation in conspiracy to distribute illegal narcotics sentenced on basis of conspiracy's plan to distribute 20 kilograms of cocaine even though that defendant was personally responsible for distributing only 7 kilograms).

Here the district court certainly could have concluded on the basis of the evidence presented that the Freightliner and the red Mack truck were vehicles obtained and altered within the course of the Patterson brothers' joint criminal enterprise, and that Bruce Patterson certainly could have forseen that as part of that joint enterprise that his brother would obtain and alter vehicles. Because the district court's determination was not clearly erroneous, it cannot be reversed by this Court. *See United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989).

### 2. Increasing the Sentence on Grounds that Bruce Patterson was an Organizer or Supervisor of the Conspiracy

In calculating Bruce Patterson's sentence, the district court determined that he was an organizer or supervisor of the conspiracy and therefore increased his offense level by two, pursuant to § 3B1.1(c) of the sentencing guidelines. Patterson contends that the district court did not have an adequate evidentiary basis on which to find that he was an organizer or supervisor of the conspiracy. Patterson's point is well taken.

Here the district court found that Bruce Patterson was an organizer or supervisor of the conspiracy based solely on information in the presentence report prepared by the United States Probation Office. When Patterson objected to the statement in the presentence report that he was an organizer or supervisor of the conspiracy, the Probation Office prepared an addendum to the presentence report which explains that the basis for its conclusion that Patterson was an organizer or supervisor of the conspiracy was an unsworn assertion by an Assistant United States Attorney.

Information obtained from Assistant United States Attorney (AUSA) Tom Dawson indicates that both the defendant and co-defendant Robert Patterson managed and supervised other persons who worked for them as they carried out their illegal activities.

Addendum to Presentence Report at 17.

 Under the sentencing guidelines, the party who seeks an adjustment in the base offense level—here, the Government—must prove by a preponderance of the evidence that the adjustment is warranted. *United States v. Alfaro,* 919 F.2d 962, 965 (5th Cir.1990). The district court is free to consider all relevant evidence—even inadmissible evidence—as long as the evidence relied upon has "sufficient indicia of reliability to support its probable accuracy." *Id.* at 964. This Court has previously held that the unsworn assertions of the Government's attorney do not provide, by themselves, a sufficiently reliable basis on which to sentence the defendant. *United States v. Johnson,* 823 F.2d 840, 842 (5th Cir.1987). Accordingly, the sentence imposed on Patterson must be vacated and the case remanded for a factual determination of whether Bruce Patterson was an organizer or supervisor of the conspiracy. *Id. See also* U.S.S.G. § 6A1.3(b) (resolution of disputed facts according to Fed. R.Crim.P. 32); Fed.R.Crim.P. 32.

### 3. Grouping Closely Related Counts

Finally, the Government raises in its cross-appeal an issue concerning the grouping of Patterson's crimes for sentencing purposes. When a defendant is convicted on more than one count, the sentencing guidelines require the sentencing court to 1) combine the various counts into groups of closely related counts, 2) determine the offense level applicable to each distinct group of counts, and then 3) determine a combined offense level applicable to all of the groups. U.S.S.G. § 3D1.1(a). In this case the district court determined that all seven of Patterson's counts were closely related, and therefore combined them into one group. The Government contends that this was error. According to the Government, Patterson's counts are not all closely related; rather, the Government contends, they should be combined into three distinct groups. If the district court had so combined Patterson's counts, the result would have been a two-level increase in Patterson's offense level. Patterson contends that the district court correctly determined that all of his offenses should be combined into one group. Resolving this dispute requires a careful trek through a potentially confusing thicket of guideline provisions.

Initially, in order to determine which of Patterson's convictions are closely related (and therefore should be grouped together), it is necessary to consider the nature of the crimes Bruce Patterson committed. These counts break down as follows. He was convicted on four counts of receipt or possession of stolen vehicles: Count 1 (conspiracy to receive or possess several stolen vehicles);[4] Count 3 (possession of a stolen red Mack truck); Count 4 (possession of a stolen white Mack truck); and Count 6 (possession of a stolen 1981 dual wheel Chevrolet truck). These four counts all allege that Patterson violated either 18 U.S.C. § 659 or 18 U.S.C. § 2313 (or both), and each of these offenses is covered by sections 2B1.1 and 2B1.2 of the sentencing guidelines.

Patterson was convicted on four counts of altering or removing VINs: Count 1 (conspiracy to alter or remove VINs on several vehicles); Count 2 (altering the VIN on a 1986 Chevrolet Silverado truck); Count 5 (altering the VIN on a 1986 CJ–7 Jeep); and Count 7 (altering the VIN on a 1987 Chevrolet Silverado pickup truck). These four counts all allege violations of 18 U.S.C. § 511, and each of these offenses is covered by section 2B6.1 of the sentencing

---

**4.** The sentencing guidelines provide that for purposes of grouping related counts, a conspiracy count is to be treated as a substantive count charging the underlying criminal activity. *See* U.S.S.G. Ch. 3, Pt. D, Introductory Commentary ("Some offenses, *e.g.,* racketeering and conspir- acy, may be 'composite' in that they involve a pattern of conduct or scheme involving multiple underlying offenses. The rules in this Part are to be used to determine the offense level for such composite offenses from the offense level for the underlying offenses.")

guidelines. In addition, Patterson was convicted of one count (Count 1) of buying or selling a vehicle with an altered VIN knowing that that vehicle's VIN has been altered. This conduct is also covered by section 2B6.1 of the sentencing guidelines.

Finally, Patterson was convicted of one count (Count 1) of obtaining money by false pretenses. This conduct is covered by section 2F1.1 of the sentencing guidelines. The following table summarizes the number and nature of Patterson's offenses.

*4 Counts of Receipt or Possession of Stolen Vehicles*

Count 1 (several vehicles)

Count 3 (red Mack truck)

Count 4 (white Mack truck)

Count 6 (1981 Chevrolet dual wheel truck)

These counts covered by U.S.S.G. §§ 2B1.1, 2B1.2

*4 Counts of Alteration or Removal of VINs*

Count 1 (several vehicles)

Count 2 (1986 Chevrolet Silverado)

Count 5 (1986 CJ–7 Jeep)

Count 7 (1987 Chevrolet Silverado)

These counts covered by U.S.S.G. § 2B6.1

*1 Count of Buying or Selling Vehicles with an Altered VINs*

Count 1 (several vehicles)

This count covered by U.S.S.G. § 2B6.1

*1 Count of Obtaining Money by False Pretenses*

Count 1 (several violations)

This count covered by U.S.S.G. § 2F1.1

Having set out Patterson's convictions in this form, we now turn to the guidelines to ascertain which of them should be grouped together.

■ When determining which counts are closely related, and therefore should be grouped together, the primary consideration under the guidelines is to group together "[a]ll counts involving substantially the same harm." U.S.S.G. § 3D1.2. Thus, generally speaking, counts that involve the same victim and either the same transaction or the same criminal enterprise will be grouped together. *See* U.S.S.G. § 3D1.2(a), (b). If, however, the counts involve different victims—as they do here—then they may be grouped together only according to the provisions of subsections (c) or (d) of § 3D1.2. U.S.S.G. § 3D1.2, Commentary, Background. The questions of whether and how to group a defendant's offenses are legal questions, as they involve "a purely legal interpretation of Guidelines terminology and the application of that terminology to a particular set of facts." *United States v. Ballard,* 919 F.2d 255, 257 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1429, 113 L.Ed.2d 481 (1991). Accordingly, this Court reviews the district court's grouping of Patterson's offenses *de novo. Id.*

■ Subsection 3D1.2(d) governs this case. Among other things, that subsection provides that offenses covered by certain specified guideline sections should be grouped together if the offenses are of the "same general type." U.S.S.G. § 3D1.2, Commentary n. 6. Each of Patterson's offenses are covered by guideline sections specified in subsection (d). That is, subsection (d) includes among its list of specified guideline sections §§ 2B1.1, 2B1.2, 2B6.1, and 2F1.1, which are the guideline sections that cover all of Patterson's offenses. Accordingly, Patterson's offenses should be combined into groups of offenses of the "same general type." Unfortunately, the guidelines provide very little guidance as to what is meant by the "same general type" of offense, although they do indicate that "[t]he 'same general type' of offense is to be construed broadly, and would include, for example, larceny, embezzlement, forgery, and fraud." U.S.S.G. § 3D1.2, Commentary n. 6.

Initially, it is clear that most of Patterson's offenses can be combined into groups of closely related counts. First, each of Patterson's offenses involving receipt or possession of stolen vehicles must be grouped together, as each of those offenses is certainly of the same general type. Second, each of Patterson's offenses involving alteration of VINs and the offense involving buying or selling vehicles with altered VINs should be grouped to-

gether, as they too involve the same general type of offense. These two groups include all but one of Patterson's offenses. A third category, therefore, will contain only this one remaining offense—the offense of obtaining money by false pretenses.

While Patterson's offenses may be combined into these three groups, they may not be combined further. For one thing, it is not possible to group the offense of obtaining money by false pretenses with either of the other two groups. There simply is no basis on which to hold that receipt or possession of a stolen automobile, or alteration of an automobile VIN, is the same general type of offense as obtaining money by false pretenses. Further, this Court has previously refused to group together, under § 3D1.2(d), the offenses of receiving a stolen vehicle and alteration of a VIN. In *United States v. Ballard* this Court held that the offense of receiving a stolen car and the offense of altering a VIN do not present "substantially the same harm" and therefore should not be grouped together. 919 F.2d at 257.[5] Thus, Patterson's offenses involving receipt or possession of stolen vehicles cannot be combined with his offenses involving alteration of VINs.

In sum, this Court holds that Patterson's offenses may be combined into three groups of closely related counts, but may not be combined further. Accordingly, it was error for the district court to combine Patterson's counts into one group, and the case must be remanded for resentencing.

### III. Conclusion

The judgment of the district court is affirmed with respect to Bruce Patterson's convictions on counts 2, 3, 6, and 7.[6] The sentence imposed by the district court is vacated, and the case is remanded for resentencing in accord with this opinion.

---

5. Patterson protests that *Ballard* was wrongly decided, but this panel is not free to re-examine the holding of a prior panel of this Court. *See, e.g., United States v. Fields,* 923 F.2d 358, 360 n. 4 (5th Cir.1991).

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

6. As noted above, Patterson did not appeal from the remaining convictions on counts 1, 4, and 5.