**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Timothy Lynn CALVERLEY,
Defendant–Appellant.**

No. 92–1175.

United States Court of Appeals,
Fifth Circuit.

Dec. 29, 1993.

Order Granting Rehearing En
Banc Feb. 18, 1994.

506

Before EMILIO M. GARZA and DeMOSS, Circuit Judges, and ZAGEL,* District Judge.

EMILIO M. GARZA, Circuit Judge:

The defendant, Timothy Lynn Calverley, pleaded guilty to possession of ethyl ether (a listed chemical) with intent to manufacture amphetamine (a controlled substance), in violation of 21 U.S.C. § 841(d)(1) (1988). The district court sentenced Calverley to 115 months imprisonment, and Calverley now appeals his sentence. Finding no reversible error, we affirm.

I

Calverley was arrested and indicted for possessing 2.5 gallons of ethyl ether with the intent to manufacture amphetamine in violation of 21 U.S.C. § 841(d)(1) (1988). At his detention hearing, Calverley falsely testified under oath that he had not possessed ethyl ether. As a result, Calverley was indicted for perjury in violation of 18 U.S.C. § 1623 (1988). Calverley pleaded guilty to both the drug and the perjury charges.

Because Calverley had had a number of prior convictions, the Presentence Report (PSR) recommended that Calverley be sentenced as a career offender, under § 4B1.1 of the federal sentencing guidelines,[1] and the district court adopted that recommendation. The district court refused Calverley's request for a two point reduction in his offense level for acceptance of responsibility. Calverley was sentenced to 115 months imprisonment for the drug offense and 60 months imprisonment for perjury, both sentences to run concurrently.

Calverley appeals his sentence for the drug offense, arguing that the district court erred by (a) sentencing him as a career offender, (b) considering his prior convictions separately, rather than as a single conviction, (c) computing his offense level according to a sentencing guideline which was not in effect at the time of the offense, and (d) refusing to reduce his offense level by two points for acceptance of responsibility.

Timothy Crooks, Asst. Fed. Public Defender, Ira Kirkendoll, Fed. Public Defender, Fort Worth, TX, for defendant-appellant.

Leonard Senerote, Delonia A. Watson, Asst. U.S. Attys., Richard H. Stephens, U.S. Atty., Dallas, TX, for plaintiff-appellee.

---

* District Judge of the Northern District of Illinois, sitting by designation.

1. United States Sentencing Commission, *Guidelines Manual*, § 4B1.1 (Nov.1992).

## II

### A

Calverley contends that he must be resentenced because the district court misapplied § 4B1.1 of the federal sentencing guidelines by sentencing him as a career offender.[2] *See* United States Sentencing Commission, *Guidelines Manual,* § 4B1.1 (Nov.1993). Calverley argues that his offense—possession of a listed chemical with the intent to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)(1)—is not a controlled substance offense, as defined in § 4B1.2(2), and therefore he is not eligible for the career offender enhancement provided in § 4B1.1. *See id.* § 4B1.2(2).

■ Because Calverley did not argue before the district court that his offense of conviction is not a controlled substance offense, we will review that issue only if it is a purely legal issue and our failure to review it would result in manifest injustice. *See United States v. Garcia–Pillado,* 898 F.2d 36, 39 (5th Cir.1990) ("[I]ssues raised for the first time on appeal 'are not reviewable by this [C]ourt unless they involve purely legal questions and failure to consider them would result in manifest injustice.' "). The question whether Calverley's offense fits the guidelines' definition of a controlled substance offense is purely a question of law. *See United States v. Guerra,* 962 F.2d 484, 485 (5th Cir.1992) ("The holding that Guerra's attempted burglary conviction qualifies as a predicate offense for § 4B1.1 enhancement is a conclusion of law, reviewed *de novo.*"). Furthermore, since Calverley received substantial additional prison time due to the

imposition of the career offender enhancement,[3] the district court's ruling was so prejudicial to Calverley that our failure to review his claim would result in manifest injustice. *See United States v. Hoster,* 988 F.2d 1374, 1382–83 (finding plain error where district court's failure to apply proper guideline resulted in unwarranted 6 point increase in defendant's offense level). We therefore review Calverley's claim on its merits.

■ Under § 4B1.1 a defendant is a career offender if

(1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Calverley contends that he is not a career offender because his "instant offense of conviction"—possession of a listed chemical with intent to manufacture a controlled substance—is not a controlled substance offense, and therefore he does not satisfy the second condition of § 4B1.1.[4] Under § 4B1.2(2) a "controlled substance offense" is

an offense under a federal or state law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(2). The commentary to § 4B1.2 states that the term "controlled sub-

---

**2.** "A guideline sentence 'must be upheld unless [the defendant] demonstrates that it was imposed in violation of the law, was imposed because of an incorrect application of the Guidelines, or is outside the range of applicable guidelines and is unreasonable.'" *United States v. Gaitan,* 954 F.2d 1005, 1008 (5th Cir.1992) (quoting *United States v. Parks,* 924 F.2d 68, 71 (5th Cir.1991)); *see* 18 U.S.C. § 3742(a) (1988).

**3.** For a defendant such as Calverley, whose statutory maximum term of imprisonment is 10 years, *see* 21 U.S.C. § 841(d) (West Supp.1993), the career offender enhancement results in an offense level of 24. *See* U.S.S.G. § 4B1.1. In conjunction with Calverley's criminal history cat-

egory of VI, that offense level yielded a guideline range for Calverley of 100 to 125 months. *See* U.S.S.G. ch. 5, Pt. A (Sentencing Table). The district court sentenced Calverley to 115 months in prison. Calverley's Presentence Report ("PSR") reveals that but for the career offender enhancement, Calverley's offense level would have been 18. In conjunction with his criminal history category of VI, the offense level of 18 would have resulted in a guideline range of 57–71 months. *See id.*

**4.** It is undisputed that Calverley's offense is not a crime of violence.

stance offense" also includes the offenses of aiding and abetting, conspiring, and attempting to commit such an offense. *See* U.S.S.G. § 4B1.2, comment. (n. 1).[5]

It is undisputed that Calverley was not charged with or convicted of any of the offenses specifically enumerated in § 4B1.2(2), or with aiding, abetting, or conspiring or attempting to commit any of those offenses. Calverley was convicted of possessing ethyl ether, which is a listed chemical,[6] and § 4B1.2(2) does not mention possession of listed chemicals; it mentions only possession of controlled substances and counterfeit substances. Ethyl ether is not a controlled substance, because it is not named in the schedules of controlled substances found at 21 U.S.C. § 812.[7] The ethyl ether which Calverley possessed also was not a counterfeit substance.[8] Therefore, on its face the definition of a controlled substance offense in § 4B1.2(2) does not include Calverley's offense of conviction and does not support application of the career offender enhancement to Calverley.

The government argues, however, that Calverley's offense—possessing a listed chemical with intent to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)—is a controlled substance offense because it satisfies the definition of attempt to manufacture a controlled substance, which is a controlled substance offense specifically enumerated in § 4B1.2(2) and its commentary. In essence the government argues that "as an attempt to manufacture a controlled substance is a controlled substance offense, violating 21 U.S.C. § 841(d) should also be a controlled substance offense because the elements of that crime are sufficient to comprise

the attempt to manufacture a controlled substance."[9]

A similar approach was taken by the Ninth Circuit in *United States v. Vea–Gonzalez*, 999 F.2d 1326 (9th Cir.1993). There the issue was whether use of a communication facility in furtherance of a drug offense, in violation of 21 U.S.C. § 843(b), was a controlled substance offense within the meaning of § 4B1.2(2). *See id.* at 1328–29. Although § 4B1.2(2) does not mention unlawful use of a communication facility, the Ninth Circuit concluded that it was a controlled substance offense, because § 843(b) prohibits the same conduct as controlled substance offenses mentioned in § 4B1.2 and its commentary. *See id.* at 1329. The Ninth Circuit looked to the statutory definition of Vea–Gonzalez' crime and noted that an element of the offense under § 843(b) was committing, causing, or facilitating a drug offense such as manufacturing, importing, exporting, distributing, or dispensing controlled substances. *See id.* The court reasoned that since manufacturing, importing, exporting, distributing, and dispensing a controlled substance were elements of the offense prohibited by § 843(b), that statute was therefore "a federal ... law prohibiting the manufacture, import, export, distribution, or dispensing of a controlled substance." U.S.S.G. § 4B1.2(2); *see Vea–Gonzalez*, 999 F.2d at 1329 ("[B]ecause § 843(b) effectively prohibits the same conduct as is prohibited by 'controlled substance offenses,' the statute is a controlled substance offense for purposes of the career offender guideline."). The Ninth Circuit observed that "[i]t would ... be anomalous to say that, although both the independent drug

**5.** The commentary to the sentencing guidelines is authoritative. *See Stinson v. United States*, — U.S. —, —, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) (holding that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with or a plainly erroneous reading of, that guideline").

**6.** *See* U.S.S.G. § 2D1.11(d) (table of listed chemicals).

**7.** *See* 21 U.S.C. § 802(6) (1988) (defining a controlled substance as "a drug or other substance,

or immediate precursor, included in schedule I, II, III, IV, or V" of 21 U.S.C. § 812 (1988)).

**8.** *See id.* § 802(7) (defining a counterfeit substance as "a controlled substance which, or the container or labeling of which, without authorization, bears the trade mark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance").

**9.** *United States v. Wagner*, 994 F.2d 1467, 1475 (10th Cir.1993) (citation omitted).

crime and [§] 843(b) prohibit the same type of [conduct], the former is a controlled substance offense while the latter is not." *Vea–Gonzalez*, 999 F.2d at 1329.

Calverley contends, however, that the government's argument—and by implication the Ninth Circuit's approach in *Vea–Gonzalez*—is barred in this Circuit by our recent decision in *United States v. Gaitan*, 954 F.2d 1005 (5th Cir.1992). Calverley is incorrect, because *Gaitan* is not contrary either to the government's argument, or to the Ninth Circuit's decision in *Vea–Gonzalez*. In *Gaitan* we held that a sentencing court, in deciding whether an offense amounts to a controlled substance offense, must not look to the criminal conduct underlying the offense. *See id.* at 1011. The defendants in *Gaitan* were convicted of possession of a controlled substance (without intent to distribute), *see id.* at 1007, which is not a controlled substance offense under § 4B1.2(2). Nevertheless, they were sentenced as career offenders because the sentencing court treated their convictions for possession as convictions for possession with intent to distribute, based on the large (i.e. distributable) quantities of drugs they possessed. *See id.* We vacated and remanded for resentencing, holding that "neither the plain wording of § 4B1.2(2), nor its commentary, allows consideration of underlying conduct" in determining whether a conviction represents a controlled substance offense. *See id.* at 1011.

Neither the government nor the Ninth Circuit in *Vea–Gonzalez* suggests that conduct underlying a conviction should be considered in applying § 4B1.2(2). In *Vea–Gonzalez*, the Ninth Circuit examined only the elements of the offense of conviction,[10] and that is what the government urges us to do here. In *Gaitan* we did not forbid the sentencing court to examine the elements of the offense of conviction in deciding whether it amounts

to a controlled substance offense. The facts of *Gaitan* did not require us to decide that issue, because the sentencing court there relied on the defendants' underlying criminal conduct—the large quantity of controlled substances which the defendants possessed, indicating their intent to distribute—rather than the elements of their offenses of conviction. *Gaitan* therefore does not foreclose the approach which the government urges us to take in this case.

Calverley further argues, however, that we should follow a recent decision of the Tenth Circuit, in which that court decided that possession of a listed chemical with intent to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d), is not a controlled substance offense. *See United States v. Wagner*, 994 F.2d 1467, 1475 (10th Cir.1993). The Tenth Circuit held that courts may consider neither underlying criminal conduct [11] nor the elements of the offense when determining whether a crime is a controlled substance offense under § 4B1.2(2).[12] Accordingly, the Tenth Circuit concluded that 21 U.S.C. § 841(d) "is not, by its plain terms, a federal or state law that prohibits manufacture or possession of a controlled substance," and "by its plain terms [the career offender provision] applies to possession or manufacture of controlled substances, and not to possession of listed chemicals." *Id.* at 1474–75. Calverley argues that we should follow the Tenth Circuit's decision in *Wagner* and hold, as that court did, that a violation of 21 U.S.C. § 841(d)(1) is not a controlled substance offense.

*Wagner*'s holding that sentencing courts may not look to underlying criminal conduct in applying § 4B1.2(2) is consistent with our decision in *Gaitan*. However, to the extent that *Wagner* forbids sentencing courts to look beyond the face of the charging instru-

---

10. *See Vea–Gonzalez*, 999 F.2d at 1329 ("In determining whether a prior conviction supports career offender status, we generally look to the statutory definition of the crime, rather than to the defendant's specific conduct.").

11. *See Wagner*, 994 F.2d at 1474–75 (noting that the definition of a controlled substance offense "refers directly to the *charged offense,* not the charged offense and all relevant conduct").

12. *See id.* at 1475 (rejecting argument "that as an attempt to manufacture a controlled substance is a controlled substance offense, violating 21 U.S.C. § 841(d) should also be a controlled substance offense because the elements of that crime are sufficient to comprise the attempt to manufacture a controlled substance") (citations omitted).

ment and consider the elements of an offense, it is in conflict with our decisions in *United States v. Cruz,* 882 F.2d 922 (5th Cir.1989), and *United States v. Rinard,* 956 F.2d 85 (5th Cir.1992). In *Cruz* we held that illegal investment in a narcotics offense was a controlled substance offense because it was " 'substantially equivalent to the offenses listed' in § 4B1.2(2)." *See Cruz,* 882 F.2d at 924. The version of § 4B1.2 then in effect listed a number of specific controlled substance offenses and provided that any offenses substantially equivalent to those specific crimes were controlled substance offenses as well. *See* U.S.S.G. § 4B1.2 and comment. (n. 2) (1988). Effective November 1, 1989, § 4B1.2 was clarified by deleting the "substantially equivalent" language.[13] However, the continuing vitality of the substantial equivalency principle was signaled by our decision in *Rinard.* Rinard, like Cruz, was convicted of illegal investment in a narcotics offense. *See Rinard,* 956 F.2d at 87–88. Although Rinard's conviction was obtained in 1990, and therefore the resulting sentence was governed by the 1990 version of the guidelines (which lacked the "substantially equivalent" language), we cited *Cruz* in holding that Rinard's offense was a controlled substance offense. *See id.* at 88 n. 10. Since our decision in *Rinard* was strictly based on *Cruz,* which in turn was exclusively based on the substantial equivalency rule from the 1988 version of § 4B1.2, the implication of *Rinard* is that that rule is still operative in § 4B1.2, even though it is no longer explicitly

stated in the guideline. In other words, under the current version of § 4B1.2, as under the 1988 version, any offense substantially equivalent to an offense specifically enumerated in § 4B1.2(2) is a controlled substance offense. *Rinard* therefore forecloses adoption of the rule which we understand to have been promulgated by the Tenth Circuit in *Wagner*—that an offense is not a controlled substance offense unless it is specifically enumerated in § 4B1.2(2).

■ Based on *Gaitan* and *Rinard,* we hold that a sentencing court, in determining whether an offense is a controlled substance offense under § 4B1.2(2), may examine the elements of the offense—though not the underlying criminal conduct—to determine whether the offense is substantially equivalent to one of the offenses specifically enumerated in § 4B1.2 and its commentary. *Cf. Vea–Gonzalez,* 999 F.2d at 1329 ("In determining whether a prior conviction supports career offender status, we generally look to the statutory definition of the crime, rather than to the defendant's specific conduct.").[14]

■ The district court did not err by holding that possession of a listed chemical with intent to manufacture a controlled substance is a controlled substance offense under § 4B1.2(2), since that offense is substantially equivalent to attempt to manufacture a controlled substance. To establish a violation of 21 U.S.C. § 841(d)(1), the government must prove that the defendant (1) knowingly

13. *See* United States Sentencing Commission, *Guidelines Manual,* app. C, amend. 268 (1993) ("The purpose of this amendment is to clarify the definitions of crime of violence and controlled substance offense....").

14. We note that the opinion in *United States v. Rinard* failed to discuss the 1989 amendments to U.S.S.G. § 4B1.2, wherein the Sentencing Commission deleted the "substantially equivalent" language upon which we relied in *Cruz. See* United States Sentencing Commission, *Guidelines Manual,* app. C, amend. 268 (1993). We note also that in footnote 7 of *United States v. Gaitan,* 954 F.2d at 1008, a subsequent panel of this Court categorized *Cruz* as being based solely on the "substantially similar" language then contained in the guidelines; explained that such guideline had been amended to delete such language; and pointed out that the prior language "does not apply" to the defendants in *Gaitan.*

The decision in *Gaitan* was made without any mention whatsoever of *Rinard.* We therefore recommend en banc consideration of this appeal, to decide whether, in light of the 1989 amendments to § 4B1.2, we should continue to follow the reasoning that governed our decision in *Cruz.* Sitting en banc we may weigh the merits of the Ninth Circuit's approach to § 4B1.2(2), as represented in *United States v. Vea–Gonzalez, supra,* versus the Tenth Circuit's narrower construction of the guideline in *United States v. Wagner, supra,* and decide whether the path taken by one of those courts, or perhaps another route altogether, should be followed by this Court. This panel, however, has no authority but to follow *Rinard,* since "it is the firm rule of this circuit that one panel may not overrule the decisions of another." *United States v. Taylor,* 933 F.2d 307, 313 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 235, 116 L.Ed.2d 191 (1991).

or intentionally (2) possessed a listed chemical (3) with intent to manufacture a controlled substance. *See* 21 U.S.C. § 841(d)(1) (1988). There are two requirements for attempt liability: (1) the defendant must act with the kind of culpability required for conviction of the underlying substantive crime; and (2) the defendant must take a substantial step toward commission of the attempted crime.[15] To be convicted either of possession of a listed chemical with intent to manufacture a controlled substance, or of manufacture of a controlled substance, the defendant must act knowingly or intentionally. *See* 21 U.S.C. §§ 841(a), (d) (1988). Therefore, a defendant such as Calverley, who possessed a listed chemical with intent to manufacture a controlled substance, acted with the kind of culpability required for manufacture of a controlled substance. The first element of attempted manufacture of a controlled substance is therefore met by a violation of 21 U.S.C. § 841(d). The second element is satisfied as well, because possession of a listed chemical constitutes a substantial step toward the manufacture of a controlled substance. *See United States v. Fooladi*, 746 F.2d 1027, 1032–33 (5th Cir.1984) (holding that evidence supported conviction for attempted manufacture of controlled substance where defendant took substantial step by acquiring precursor chemicals and necessary equipment), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 382 (1985). We therefore hold that possession of a listed chemical with intent to manufacture a controlled substance, in violation of 21 U.S.C. § 841(d)(1), is substantially similar to attempted manufacture of a controlled substance,[16] and is therefore a controlled substance offense within the meaning of U.S.S.G. § 4B1.2.

## B

Calverley further contends that the district court violated the ex post facto clause of the Constitution, U.S. Const. art. I, § 9, cl. 3, by applying a version of § 4A1.2 of the sentencing guidelines which took effect after Calverley committed his offense, and which was less favorable to Calverley than the version of § 4A1.2 which was in effect on the date of the offense. Calverley contends that his five prior sentences of imprisonment should have been treated as one sentence for criminal history purposes,[17] because those sentences were imposed in related cases,[18] as defined in the commentary to § 4A1.2.[19] Calverley maintains that the district court treated his prior sentences separately based on the version of § 4A1.2 that took effect November 1, 1991—before he was sentenced, but after he committed the instant offense.

■ Although Calverley objected at sentencing to the separation of his prior sentences, his objection was not premised on the theory which he now raises before this Court. Because Calverley raises the issue of an ex post facto clause violation for the first time on appeal, we will not review that issue unless we must to prevent manifest injustice. *See Garcia–Pillado*, 898 F.2d at 39.

■ On the date of Calverley's offense—May 22, 1991—the commentary to § 4A1.2 stated that cases were related "if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing."

---

**15.** *See United States v. Salazar*, 958 F.2d 1285, 1296 (5th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 185, 121 L.Ed.2d 129 (1992); *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).

**16.** *See United States v. Hyde*, 977 F.2d 1436, 1439 (11th Cir.1992) (holding that 21 U.S.C. § 841(d)(2) "makes an independent crime out of the elements that otherwise would comprise an attempt to manufacture" a controlled substance), *cert. denied*, —— U.S. ——, 113 S.Ct. 1948, 123 L.Ed.2d 653 (1993); 21 U.S.C. § 841(d)(2) (prohibiting knowing or intentional possession of a listed chemical with knowledge or reasonable

cause to believe that the listed chemical will be used to manufacture a controlled substance).

**17.** Under § 4A1.1 of the guidelines, points are added to a defendant's criminal history score for each prior sentence of imprisonment which has been imposed on the defendant. *See* U.S.S.G. § 4A1.1.

**18.** "Prior sentences imposed in related cases are to be treated as one sentence for purposes of § 4A1.1." *See id.* § 4A1.2(a)(2) (emphasis added).

**19.** *See id.* § 4A1.2, comment. (n. 3).

U.S.S.G. § 4A1.2, comment. (n. 3) (1990); *id.* app. C, amend. 382 (1993). Effective November 1, 1991, the commentary to § 4A1.2 was amended to provide that

> [p]rior sentences are not considered relat- ed if they were for offenses that were sepa- rated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). Otherwise, prior sentences are considered related if they resulted from offenses that (1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentenc- ing.

*id.* app. C, amend. 382 (emphasis added). Calverley contends that the district court treated his prior sentences separately pursu- ant to the November 1, 1991 version of the commentary to § 4A1.2, because the underly- ing convictions were separated by interven- ing arrests. According to Calverley, the dis- trict court's application of that version of the guidelines violated the ex post facto clause of the Constitution.

Even assuming that the district court re- lied on the November 1, 1991 version of the commentary to § 4A1.2, which the govern- ment disputes; and even assuming that reli- ance on that version of the guidelines violat- ed the ex post facto clause; Calverley is not entitled to relief, because he does not argue that the district court's action subjected him to a more severe sentence. Calverley does not contend that his prior convictions would have been found to be related if the district court had applied the earlier version of the guidelines. Calverley merely contends that "the district court should be given a chance to reconsider its ruling," and he forthrightly concedes that although he "received identical concurrent sentences for similar type crimes," that "does not necessarily make the cases in which those sentences were imposed 'related cases' under … U.S.S.G. § 4A1.2." Because Calverley does not argue that his sentence would have been different if not for the district court's allegedly erroneous rul- ing, he has not shown that manifest injustice would result from our failure to review the merits of his argument. Consequently, we refuse to consider the ex post facto issue

which Calverley raises for the first time on appeal. *See Garcia–Pillado,* 898 F.2d at 39; *United States v. Jackson,* 700 F.2d 181, 190 (5th Cir.) ("[A]bsent a showing of manifest injustice, a litigant may not raise a theory on appeal that was not presented to the district court."), *cert. denied,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).

## C

■ Calverley next contends that the dis- trict court violated the ex post facto clause of the Constitution by computing his offense level under § 2D1.11 of the guidelines, which was not in effect at the time of his offense. *See* U.S.S.G. § 2D1.11 (setting offense levels for possession of listed chemicals); U.S.S.G. app. C, amend. 371 (enacting § 2D1.11 as of November 1, 1991). At sentencing Calverley did not raise the ex post facto issue which he now presents to this Court. Because Calver- ley raises this issue for the first time on appeal, we will not review it on its merits unless our failure to do so would result in manifest injustice. *See Garcia–Pillado,* 898 F.2d at 39; *Jackson,* 700 F.2d at 190. Cal- verley has made no such showing, because he does not argue that he would have received a less severe sentence if § 2D1.11 had not been applied. Calverley merely asserts that "it cannot be said that [he] was not treated more harshly" under § 2D1.11. Because Calverley does not show that manifest injustice would result from our failure to consider his argu- ment on its merits, we decline to do so.

## D

■ Lastly Calverley contends that the district court erred by failing to reduce his offense level by two points for acceptance of responsibility. *See* U.S.S.G. § 3E1.1 ("If the defendant clearly demonstrates accep- tance of responsibility for his offense, de- crease the offense level by 2 levels."). Sec- tion 3E1.1 "requires a showing of sincere contrition on the defendant's behalf to war- rant the reduction" for acceptance of respon- sibility. *United States v. Beard,* 913 F.2d 193, 199 (5th Cir.1990); *United States v. Reed,* 882 F.2d 147, 150 (5th Cir.1989). Whether the defendant clearly demonstrates acceptance of responsibility is a question of

fact, and the district court's finding on that issue will be overturned only if it is without foundation. *United States v. Perez,* 915 F.2d 947, 950 (5th Cir.1990).

 Calverley suggests that he is entitled to the two-level reduction for acceptance of responsibility because he pleaded guilty. It is true that "[e]ntry of a plea of guilty prior to the commencement of trial[,] combined with truthfully admitting the conduct comprising the offense of conviction ... will constitute significant evidence of acceptance of responsibility for the purposes of" § 3E1.1. U.S.S.G. § 3E1.1, comment. (n. 3). However, "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility. A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." *Id.* Calverley engaged in conduct which was inconsistent with an acceptance of responsibility when, at his detention hearing before a magistrate judge, he lied under oath, denying that he was in possession of ethyl ether on the date of his offense. Calverley's perjury supported an offense level enhancement for obstruction of justice,[20] and the commentary to § 3E1.1 explicitly provides that "[c]onduct resulting in an enhancement [for obstruction of justice] ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1 (n. 4).

 Calverley contends, nevertheless, that his perjury at the detention hearing does not support a finding that he did not accept responsibility for his conduct. Calverley bases this argument on the following colloquy, which took place at his sentencing hearing:

THE COURT: ... you have a perjury charge against [Calverley] based on—

MR. SENEROTE [Assistant United States Attorney]: Based on what he said in his testimony during the bail hearing.

THE COURT: Yes. You don't think that alone would deny his acceptance of responsibility.

MR. SENEROTE: His perjury?

THE COURT: Uh-huh.

MR. SENEROTE: I don't believe that it does.

THE COURT: I don't either.

Record on Appeal, vol. 5, at 29. Calverley points out that during this colloquy, "the government conceded that [Calverley's perjury] alone would not be sufficient to justify denying Calverley a reduction for acceptance of responsibility, and the district court agreed." In spite of the foregoing colloquy, we conclude that the district court was entitled to consider Calverley's perjury in finding that he had not accepted responsibility for his crime. Assuming *arguendo* that the district court and the prosecutor correctly concluded that Calverley's perjury *alone* would not deny him a reduction for acceptance of responsibility, that is not to say that Calverley's perjurious statements provide no support whatsoever for the district court's finding that Calverley did not accept responsibility. We need not find that that factor *alone* supported the district court's finding, because other factors support the district court's finding as well.

At sentencing the district court asked the prosecutor to explain the government's position regarding acceptance of responsibility. The prosecutor responded that he had "interviewed Mr. Calverley, and based upon [his] interview with him would say he did not accept responsibility." The prosecutor further stated as follows:

[Calverley's] story to us was that he went to Wisconsin with [co-defendant] Laura Walker to pick up some furniture, and holy moly along the way amphetamine popped up, and holy moly he happened to be there on the night on Embry and—and got caught up in all of this. He did not admit his activity, he did not admit his motivation, he did not admit that he was working

---

**20.** *See* U.S.S.G. § 3C1.1 ("If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels."); *id.* comment. (n. 3(f)) (stating that obstruction of justice enhancement is imposed for "providing materially false information to a judge or magistrate").

with her to do this. His story is he merely got caught up in the end having been drawn in this by her and that—that he's kind of an innocent victim, not innocent victim, victim of her conniving.

*Id.* at 28–29. The prosecutor's statement that Calverley did not admit his conduct, his motivation, or his cooperation with Laura Walker in carrying out a drug offense, supports the district court's factual conclusion that Calverley did not make a showing of sincere contrition which would entitle him to a reduction for acceptance of responsibility.

 Calverley contends, however, that the district court's finding should be overturned because "[i]t was error for the district court to receive or consider the unsworn assertions of the prosecutor in sentencing Calverley." In support of that argument, Calverley cites *United States v. Patterson*, 962 F.2d 409 (5th Cir.1992), for the proposition that "the unsworn assertions of the government's attorney do not provide, by themselves, a sufficiently reliable basis on which to sentence the defendant." *Id.* at 415 (citing *United States v. Johnson*, 823 F.2d 840, 842 (5th Cir.1987)). Calverley's reliance on *Patterson* is misplaced, because that case does not hold that the district court may not consider the unsworn statements of the prosecutor. *See id.* ("The district court is free to consider all relevant evidence—even inadmissible evidence—as long as the evidence relied upon has 'sufficient indicia of reliability.' "). *Patterson* merely holds that such statements, when they are the only evidence supporting the district court's finding, are inadequate to support that finding. *See id.; see also Johnson*, 823 F.2d at 842 (where district court "relied exclusively on the government attorney's account" to resolve factual dispute). Because Calverley's perjury at his detention hearing, as well as the prosecutor's statements, support the conclusion that Calverley did not accept responsibility for his offense, this is not a case where the unsworn state-

ments of the prosecutor alone support the district court's finding. Therefore, the authority cited by Calverley does not establish that the district court's finding regarding acceptance of responsibility was without foundation.

 Calverley further contends, however, that the district court erred by considering the prosecutor's statements, because in making them the prosecutor violated Calverley's plea agreement. That agreement provided that "[t]he United States and defendant TIMOTHY LYNN CALVERLEY understand that no information provided by him pursuant to this agreement will be used against him directly in any proceeding, including the sentencing in these cases." According to Calverley, the prosecutor violated that agreement by describing his interview with Calverley and arguing that, based on that interview, Calverley was not entitled to a reduction for acceptance of responsibility. It is at least arguable that the prosecutor violated the plea agreement by relating to the district court Calverley's statements during the interview.[21] Calverley apparently made those remarks pursuant to the plea agreement, and therefore they might be characterized as "information provided by [Calverley] pursuant to [the plea] agreement." However, the same is not true of the prosecutor's statement that Calverley did not admit his conduct, his motivation, or his cooperation with Laura Walker in the drug offense.[22] In that instance the prosecutor did not use any information provided by Calverley. He merely commented on Calverley's failure to admit responsibility for his acts, which is not prohibited by the plea agreement. Because the latter remarks did not violate the plea agreement, Calverley's argument does not persuade us that the district court should not have considered those remarks in finding that Calverley did not accept responsibility for his crime. We

---

21. "[Calverley's] story to us was that he went to Wisconsin with [co-defendant] Laura Walker to pick up some furniture, and holy moly along the way amphetamine popped up, and holy moly he happened to be there on the night on Embry and—and got caught up in all of this.... His story is he merely got caught up in the end having been drawn in this by her and that—that

he's kind of an innocent victim, not innocent victim, victim of her conniving."

22. "He did not admit his activity, he did not admit his motivation, he did not admit that he was working with her to do this."

therefore conclude that the district court's finding was not without foundation, as it was supported by Calverley's perjury at his detention hearing, as well as the prosecutor's comments regarding Calverley's failure to admit his responsibility.

### III

For the foregoing reasons, we AFFIRM.

ON SUGGESTION FOR REHEARING
EN BANC

Feb. 18, 1994.

Before POLITZ, Chief Judge, KING, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, JONES, SMITH, DUHÉ, WIENER, BARKSDALE, EMILIO M. GARZA, and DeMOSS, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the suggestion for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.