**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 97-51050

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GARY PATRICK NUTALL and RAYMOND ANDRE NUTALL,

Defendants-Appellants.

Appeals from the United States District Court
For the Western District of Texas

June 25, 1999

Before EMILIO M. GARZA, DeMOSS, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Brothers Raymond Andre Nutall and Gary Patrick Nutall were convicted of conspiracy to interfere with commerce by robbery, interfering with commerce by robbery, and using and carrying a weapon during a crime of violence. Gary Patrick Nutall appeals, contending that the district court, in denying his motion to sever the trial, violated his right to a fair trial and his right to confrontation. Raymond Andre Nutall also appeals, contending that the Government failed to produce sufficient evidence of an effect on interstate commerce. We AFFIRM.

I. FACTS AND PROCEEDINGS

1

On December 29, 1995, a robbery occurred at the Ace America Cash Express store on Fredericksburg Road in San Antonio, Texas just after closing.  One man, armed with a gun, demanded money from the Ace America manager Charles Milburn.  The man ordered Milburn to enter the store and open the safe.  Milburn opened the door to the store and disarmed the alarm.  As the men entered the store, the robber placed a mask over his face.  After receiving money, the man ordered Milburn to sit down, tied Milburn's hands together, and took Milburn's wallet.

On February 2, 1996, a man attempted to commit a robbery at the Ace America store on Cross Creek Road in San Antonio.  A man with a gun approached Lenny Alcorta as she exited the store.  The man pointed a gun at Alcorta's head and ordered her to re-enter the store and disarm the alarm.  Upon disarming the alarm, Alcorta was ordered to open the safe.  She attempted to open the safe but was unsuccessful.  The man stole Alcorta's purse, including her identification and approximately $500 in cash.

Following the robbery and the attempted robbery at the Ace America stores, San Antonio police detective William Biesenbach conducted surveillance of two men in March and early April, 1996. Biesenbach later identified these men as Gary Nutall and Raymond Nutall.  Detective Biesenbach followed the two men as they stopped at, and drove by approximately 10 offices of four different check cashing businesses in San Antonio, Texas.  Detective Biesenbach estimated that the two men drove by the businesses approximately 25 times.

Biesenbach identified two vehicles that the men used in driving by the businesses: a black Nissan 200SX and a white Nissan Altima. Raymond Nutall owned the 200SX and Gary Nutall owned the Altima. During the drive-bys, Gary Nutall drove the vehicle while Raymond Nutall sat in the passenger seat. On a number of occasions, Biesenbach observed Gary Nutall cover the license plate on his Altima with the license plate from another vehicle or switch plates before driving by businesses. Biesenbach also observed Raymond Nutall place a gym bag in Gary Nutall's car on two occasions.

On April 1, 1996, Biesenbach stopped the Altima and arrested Gary and Raymond Nutall. Biesenbach testified that he located a gym bag in the back seat of the car that contained a revolver, a ski mask, a rubber mask, gloves, pillow cases, a knife, binoculars, and duct tape. Biesenbach further testified that when he stopped the Appellants, the license plate on the Altima belonged to another vehicle and that the Altima's plates were in the trunk. An officer assisting in the arrest testified that he found gloves in Gary Nutall's front pants pocket. In written statements, both Appellants confessed to "casing" the various check cashing businesses.

At trial, the Government presented evidence of Gary Nutall and Raymond Nutall's involvement in the December, 1995 robbery at the Fredericksburg Road Ace America store. Milburn identified various items that belonged to the Appellants that were similar to items used by the robber, including a mask and a flowered pillow case.

3

Milburn also identified a purple strap found at Raymond Nutall's apartment. These straps are used by Ace America to bind money. Milburn also said that the Government's exhibit, a semi-automatic pistol belonging to Robert Taylor, was similar to the firearm used by the robber. In written statements, both Appellants confessed to participating in the Fredericksburg Road Ace America robbery.

The Government also produced evidence of Gary Nutall and Raymond Nutall's involvement in the February, 1996 attempted robbery at the Cross Creek Ace America store. At trial, Alcorta identified a black jacket found in Raymond Nutall's car as the jacket that the robber wore. She also testified that a ski mask found in a gym bag in Gary Nutall's car was the same color as the one worn by the robber. The Government introduced evidence located by the San Antonio police at Raymond Nutall's apartment, including Alcorta's driver's license, manager's card, address book, and other personal belongings. In written statements, both Appellants confessed to the February, 1996 attempted robbery of the Cross Creek Ace America store.

The Government also offered evidence that the Appellants exhibited a sudden increase in available cash following the December, 1995 robbery. On December 30, 1995, Gary Nutall paid $5,460 toward the purchase of a white Nissan Altima. In January, 1996, he returned to the Nissan dealership to install a CD player, an alarm, and tinting and while there, he showed one of the salespeople clothes in the trunk that he recently had purchased. In February, 1996, Raymond Nutall purchased a Nissan 200SX, and

4

also made cash purchases of clothing and jewelry.

Appellants were charged in a five count indictment with conspiracy to interfere with commerce by robbery, 18 U.S.C. § 1951, two counts of interference with commerce by robbery, 18 U.S.C. §§ 2, 1951 (Counts Two and Four), and with two counts of using and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 2, 924(c)(1) (Counts Three and Five).

Despite his confession and the evidence against him, Gary Nutall later denied robbing the Ace America store in December, attempting to rob the Ace America store in January, and casing check cashing businesses and making plans to rob them. With respect to the written confession, Gary Nutall explained that he could not read nor write very well, and when he signed the confession written by FBI Agent Henry, he did not know what the statement said. He also claims that he only admitted his role in the alleged crimes because Agent Henry continued to question and threaten him with an extensive prison sentence. In addition, Gary Nutall explained that his other brother, Paul Nutall, gave him the money to purchase the white Nissan and took him to a clothing store to purchase some new clothes. Finally, he presented two alibi witnesses, his brother-in-law and his nephew, who testified that Gary Nutall was at home with his family on the night the store was robbed.

A jury convicted Appellants on all counts.

## II. ANALYSIS

Raymond Nutall raises two arguments on appeal: (1) the

5

Government failed to show the requisite effect on interstate commerce; and (2) the district court erred when it gave jury instructions relating to the effect on interstate commerce. Gary Nutall raises three issues on appeal: (1) the district court abused its discretion in denying his motion to sever; (2) the district court committed *Bruton* error in admitting the confession of Raymond Nutall which included a clear reference to Gary Nutall; and (3) the trial court erred when it erroneously admitted irrelevant evidence. We AFFIRM.

A. Raymond Andre Nutall

1. Effect on Interstate Commerce

Raymond Nutall claims that the evidence is insufficient to support a finding that his robbery obstructed interstate commerce, an essential element of federal criminal jurisdiction. This Court reviews such challenges to evidentiary sufficiency in the light most favorable to the verdict, inquiring only whether a rational juror could have found each element of the crime proven beyond a reasonable doubt. *See United States v. Collins*, 40 F.3d 95, 99 (5th Cir. 1994) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)).

Initially, we must address the amount of effect required on interstate commerce under the Hobbs Act. The evidence in this case satisfies the impact on commerce required for Hobbs Act jurisdiction under *United States v. Robinson,* 119 F.3d 1205 (5th Cir. 1997). Ace America Cash Express is a nationwide company that cashes checks and sells money orders. Ace cashes checks from in-state and out-of-state banks. Before checks are cashed, Ace places

6

phone calls to verify the legitimacy of the checks and whether there is sufficient funds to cover the checks. Ace sells money orders which are drawn from out-of-state banks and Ace sends and receives wire-transferred money to and from points outside of Texas and outside of the United States. In addition, Ace electronically files tax returns for its customers. Tax returns are transferred to Seattle, Washington. Ace stores typically maintain large amounts of cash at their stores.

The Government, relying on a depletion of assets theory, offered evidence that the Appellants received more than $27,000 from the Ace America robbery. The theft of this money prevented Ace America from conducting its business which operated in interstate commerce. It is clear that this Court has approved the depletion of assets theory as a method for showing an effect on interstate commerce. *See United States v. Collins*, 40 F.3d 95, 99-100 (5th Cir. 1994). Further, the Government offered evidence that the robbery prevented Ace America from being able to cash one check on the day of the robbery. The Government established the requisite effect on interstate commerce.

## 2. Instruction on Effect on Interstate Commerce

Raymond Nutall contends that the district court erred in submitting the interstate commerce instruction to the jury because there was insufficient evidence to prove the required effect. In particular, Raymond Nutall argues that the trial court should have required a *substantial* rather than a *de minimis* effect on interstate commerce. The district court's instruction requiring a

*de minimis* effect was not an abuse of discretion. The Appellant's argument is foreclosed by *Robinson,* 119 F.3d at 1215 (holding that, in light of the aggregation principle, "the particular conduct at issue in any given case need not have a substantial effect upon interstate commerce.").

### B.  Gary Patrick Nutall

#### 1.  Severance and Fair Trial

Gary Nutall contends that the district court erred in refusing to sever the trial. Specifically, he argues that the district court's denial of severance compromised his rights under the Sixth Amendment to call witnesses in his defense. We review the district court's denial of a motion for severance for abuse of discretion. *See Zafiro v. United States,* 506 U.S. 534, 539 (1993). The Appellant must demonstrate specific compelling prejudice. *See United States v. Capote-Capote*, 946 F.2d 1100, 1104 (5th Cir. 1991). A showing of prejudice must be balanced against the public's interest in efficient judicial administration. *See United States v. Lindell,* 881 F.2d 1313, 1319 (5th Cir. 1989).

In order to establish a prima facie case warranting severance for the purpose of introducing exculpatory evidence of a co-defendant, the defendant must show:  (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant would in fact testify if the severance were granted. *See United States v. Broussard*, 80 F.3d 1025, 1037 (5th Cir. 1996).

After a careful review of Gary Nutall's motion to sever and

Raymond Nutall's affidavit stating that he would testify, we do not find that the district court abused its discretion in denying severance. Raymond Nutall's proposed testimony stated:

> If called, I would testify that my brother Gary had nothing to do with the robberies in this case. I know this because another person told me that he had committed those robberies and also told me that Gary was not involved. If called to testify, I will name that person.

The substance of Raymond Nutall's proposed testimony provided, at best, "unsupported, self-serving statements that were only tangentially exculpatory." *United States v. Daly*, 756 F.2d 1076, 1080 (5th Cir. 1985). We find no abuse of discretion in denying Gary Nutall's severance motion.

### 2. Right to Confrontation

Gary Nutall contends that his Sixth Amendment Right to Confrontation was violated when the confession of his co-defendant's brother was introduced at their joint trial. Raymond Nutall, in a written statement, confessed to robbery and conspiracy and incriminated his brother, Gary Nutall. Because the confession was inadmissible against Gary Nutall, the Government blacked out Gary Nutall's name with a dark marker. At trial, however, the Government introduced Raymond Nutall's confession which included a reference to Gary Nutall's home address. Gary Nutall contends the reference to his address was "the functional equivalent of naming" him. This Court reviews a constitutional challenge *de novo*. *See United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir.), *cert. denied*, 118 S.Ct. 254 (1997). *Bruton* issues, failures to remove references to co-defendants, are reviewed for abuse of discretion.

9

*See United States v. Fletcher*, 121 F.3d 187, 197 (5th Cir. 1997).

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him."  In *United States v. Bruton,* 391 U.S. 123 (1968), the Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant.   In *Richardson v. Marsh,* 481 U.S. 200, 211 (1987), the Court considered the application of *Bruton* to a redacted confession, holding that a redacted confession of a non-testifying co-defendant is admissible when the confession omits the defendant's name and any other "reference to his or her existence."  *Bruton*'s protective rule, however, applies to a non-testifying co-defendant's confession when the redacted confession replaces the defendant's name with an obvious deletion.  *See Gray v. Maryland,* 118 S.Ct. 1151 (1998).

The Government acknowledges, and we agree, that the confession admitted in this case, having been redacted by blacking out Gary Nutall's name with a marker but leaving the reference to the address, is exactly the type of evidence found unconstitutional by *Gray*.  The admission of the confession was error.

*Gray,* however, did not undercut this Circuit's holding that *Bruton* error may be considered harmless when, disregarding the co-defendant's confession, there is otherwise ample evidence against a defendant.  *See United States v. Kelly*, 973 F.2d 1145, 1150 (5th

10

Cir. 1992) (recognizing harmless error standard). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). We therefore must determine whether, absent the *Bruton*-tainted confessions, there was a reasonable probability that the defendant would have been acquitted. *See United States v. Lewis*, 786 F.2d 1278, 1286 n.11 (5th Cir. 1986).

After our review of the record, we find, beyond a reasonable doubt, that the evidence was harmless; that is, that it did not prejudicially contribute to the convictions. *See Chapman,* 386 U.S. at 24. Gary Nutall provided his own confession in which he confessed to committing the December robbery and serving as the getaway driver in the February robbery. Further, he admitted casing various check cashing businesses in San Antonio. The Government showed that, in the days following the December robbery, Gary Nutall went on a large spending spree, purchasing an automobile and clothing. The admission of the redacted confessions, while error, was harmless error.

### 3.  Admissibility of Evidence and Testimony

Gary Nutall contends that the district court erroneously admitted irrelevant evidence of a pistol that unfairly linked him to the December robbery. In addition, he contends that the district court allowed inadmissible hearsay evidence and asserts that the admission of the irrelevant and hearsay evidence was prejudicial and requires reversal.

11

### a.  The Pistol

Gary Nutall argues that the pistol was not relevant and the trial court should have excluded it under Fed. R. Evid. 401.  All evidence offered at trial is subject to a threshold test of "relevancy."  "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  "All relevant evidence is admissible...[e]vidence which is not relevant is not admissible." Fed. R. Evid. 402.

In reviewing the district court's rulings on matters of relevancy, this Court is guided by the principle that district courts have wide discretion in determining relevancy under Rule 401.  The district court's decision will not be disturbed absent a substantial abuse of discretion.  *See United States v. Hays*, 872 F.2d 582, 587 (5th Cir. 1989).  The review of erroneous evidentiary rulings in criminal trials is necessarily heightened.  Ultimately, we examine "what effect the error had or reasonably may be taken to have had upon the jury's decision."  *Hays*, 872 F.2d at 587 (citing *Kotteakos v. United States*, 328 U.S. 750, 764 (1946)).

After reviewing the relevance of the evidence, we conclude that the district court did not abuse its discretion.  Gary Nutall Nutall was charged, *inter alia*, with two counts of using and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c).  In Gary Nutall's confession, he stated that he used a semi-automatic weapon in the robbery at Ace America.

12

Raymond Nutall's confession also referenced that a weapon was used in the robbery. At trial, the Government introduced a semi-automatic weapon. This weapon fit the description of the weapon described in Gary Nutall's confession. Further, Charles Milburn, the manager of the Ace store robbed in December, testified that the weapon admitted at trial resembled the weapon used in the robbery. The weapon introduced at trial was relevant to the crimes at issue and was properly admitted.

### b. Hearsay Testimony

Gary Nutall contends that the district court erroneously admitted hearsay testimony. The Government concedes that the particular testimony was hearsay, but contends that its admission was harmless and does not require reversal. The Government bears the burden of showing that the error was not prejudicial. *See United States v. Olano*, 507 U.S. 725, 734 (1993).

Gary Nutall's confession stated that he borrowed a semi-automatic pistol from an individual named "Bobby." Raymond Nutall's confession stated that the pistol used in the robbery had been obtained from an individual named "Bobby Sanders" or "Bobby Jr." At trial, the Government introduced what it claimed was the pistol mentioned in the confessions. FBI Agent Henry testified that he received the gun from a man named "Robert Taylor." The Government then elicited testimony that Robert Taylor's nickname was "Bobby Jr." It is undisputed that this testimony was hearsay.

Gary Nutall argues that Agent Henry's hearsay testimony was the only evidence that Robert Taylor, the owner of the pistol

introduced at trial, was also "Bobby Jr.," the owner of the pistol used in the robberies.  Thus, he argues, this evidence had the effect of corroborating his confession.

We conclude that the hearsay evidence, while erroneously admitted, considered in light of the other overwhelming evidence of guilt, did not have a prejudicial effect.

### III.  CONCLUSION

For the above reasons, the Appellants' convictions are AFFIRMED.

ENDRECORD

14

DeMOSS, Circuit Judge, specially concurring:

Because our Court divided evenly in its en banc reconsideration of whether the Hobbs Act, 18 U.S.C. § 1951, can be constitutionally applied to the robbery of a local retail store in *United States v. Hickman*, ___ F.3d ____ (5th Cir. 1999), I recognize that the holding of a panel of this Court in *United States v. Robinson*, 119 F.3d 1205 (5th Cir. 1997), is still binding precedent and I concur in the judgment of affirmance in this case.

However, for the reasons stated by Judge Higginbotham in his dissent in *Hickman* and for the reasons which I have stated previously, *see* *United States v. Hebert*, 131 F.3d 514 (5th Cir. 1997) (DeMoss, J., dissenting in part); *United States v. Miles*, 122 F.3d 235 (5th Cir. 1997) (DeMoss, J., specially concurring), I remain convinced that by prosecuting local robberies on the theories that (1) the effect of local robberies can be aggregated for purposes of determining an effect on interstate commerce; (2) the taking of cash from a local retail store causes a "depletion of assets" which reduces the ability of that store to participate in interstate commerce; and (3) only a "de minimis effect" on interstate commerce is needed to sustain the applicability of the Hobbs Act to these local robberies, the Department of Justice is stretching the plain language of the Hobbs Act well beyond the bounds contemplated by Congress.

The defendants in this case were put under surveillance by the San Antonio Police Department, were investigated and arrested by the San Antonio Police Department, were charged with violations under Texas law, and had their residence searched with a warrant

issued by a state judge. In statements given to San Antonio Police Department detectives, the defendants essentially confessed to committing robberies under Texas law. But for the interposition of the federal prosecutions in this case, these individuals would have been charged, tried, and convicted of violations of the Texas robbery statute.

By its express language, the Hobbs Act makes criminal the conduct of "obstructing, delaying, or affecting commerce between a point in one state and a point in another state by robbery." There is nothing in the language of the Hobbs Act nor its legislative history that supports a contention that it was intended to make a federal crime out of local robberies that in no way affect that intercourse.

Under the Supreme Court's decision in *United States v. Lopez*, 514 U.S. 549, 566-68 (1995), the federal courts are charged with the task of drawing a line between criminal conduct which is "truly local" and criminal conduct which is "truly national" in effect. In my view, it is impossible to reconcile the theories upon which the Department of Justice contends that the Hobbs Act should be applied to local robberies with the teaching and analysis set forth by the Supreme Court in *Lopez*. Sooner or later the Supreme Court must either back down from the principles enunciated in *Lopez* or rule that the Hobbs Act cannot be constitutionally applied to local robberies. I urge the defendants in this case to seek a writ of certiorari on this point.

17