**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 98-11183

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROSALINDA MIRANDA, ABEL ESPINOZA, RIGOBERTO RODRIGUEZ, also know as Rigo, OSCAR RODRIGUEZ, HECTOR ESPINOZA, also known as Toro,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas

April 17, 2001

Before KING, Chief Judge, REYNALDO G. GARZA, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Rosalinda Miranda, Abel Espinoza, Rigoberto Rodriguez, Oscar Rodriguez, and Hector Espinoza appeal their convictions and sentences for drug related offenses. We affirm all the convictions, affirm the sentences of Rosalinda Miranda, Abel Espinoza, Rigoberto Rodriguez, and Hector Espinoza, vacate Oscar Rodriguez's sentence, and remand his case for resentencing.

**FACTS AND PROCEDURAL HISTORY**

1

A large-scale investigation by the Federal Bureau of Investigation ("FBI") and the Dallas Police Department into the distribution of cocaine and marijuana in the Dallas, Texas area led to a nineteen-count federal indictment against twenty-one individuals. The indictment alleged, in pertinent part, that from May 1996 until June 1997, Appellants (1) conspired to possess with the intent to distribute marijuana, cocaine, and cocaine base, in violation of 21 U.S.C. § 856; (2) distributed or possessed cocaine and cocaine base in violation of 21 U.S.C. § 841; and (3) used a telephone to facilitate the distribution of cocaine and cocaine base. Appellants, all related to one another by blood or marriage, sold drugs primarily out of crack houses or "trap" houses. They did a high volume of small quantity sales, typified by "dime rocks" of cocaine -- $10 rocks with an estimated weight of .125 grams.

Appellants were jointly tried, along with Roberto Garcia, in July 1998. After a two-and-a-half-week trial, the jury returned a verdict acquitting Garcia and finding the remaining defendants (Appellants) guilty on all counts. The district court overruled Appellants' objections to the Pre-Sentence Investigation Reports ("PSRs") prepared by the United States Probation Office, adopted the PSRs' findings and sentencing recommendations and sentenced Appellants as follows:

| Defendant | Off.Level/Crim.Hist | U.S.S.G.Range | Count:Sentence |
|---|---|---|---|
| Rosalinda Miranda | 41/I | 324-405 | 1: 364 months |

|  |  |  | 18: 48 months |
|---|---|---|---|
| Abel Espinoza | 38/I | 235-293 | 1: 235 months<br>11: 48 months<br>14: 48 months |
| Rigoberto Rodriguez | 38/I | 235-293 | 1: 240 months<br>2: 240 months |
| Oscar Rodriguez | 38/II | 262-327 | 1: 262 months<br>6: 240 months |
| Hector Espinoza | 41/I | 324-405 | 1: 364 months<br>17: 48 months<br>20: 48 months |

## DISCUSSION

### A. Motion for Severance

Rosalinda Miranda moved to sever her trial from the trial of her co-defendants claiming that the other defendants could raise defenses inconsistent and antagonistic to her own, and that she would be prohibited from calling them as witnesses. She also stated that she would be prejudiced by the spillover effect of evidence incriminating her co-defendants. The government filed a response, arguing that joinder was permitted under Federal Rules of Criminal Procedure 8 and 14. The district court denied the motion, finding that Rosalinda Miranda had not demonstrated compelling prejudice or shown that a limiting instruction would not protect her interests. We review the district court's denial of severance for abuse of discretion. *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

We have noted that "persons indicted together should be tried together, especially in conspiracy cases." *United States v. Neal*, 27 F.3d 1035, 1045 (5th Cir. 1994) (citations omitted). However, separate trials should be granted when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

We are not convinced that Rosalinda Miranda suffered undue prejudice as the result of spillover of evidence offered against her co-defendants. The district court clearly instructed the jurors to give separate consideration to the evidence as to each defendant. The jury is presumed to have been able to follow these instructions and, indeed, its finding of "not guilty" as to Garcia demonstrates the validity of that presumption. *Neal*, 27 F.3d at 1045 (stating that "the jury's 'not guilty' verdicts as to some defendants demonstrate that the jurors followed the district court's instructions and considered the evidence separately as to each defendant").

Likewise, we find no merit in Rosalinda Miranda's claim that she was prejudiced by being denied the opportunity to challenge statements made in taped phone conversations because her co-defendants did not take the stand at trial. While not entirely clear, Rosalinda Miranda appears to be claiming that, had she been

4

able to cross-examine her co-defendants, they would have testified that she was not the "Rosa" that was mentioned in the phone conversations. To warrant severance based on the exculpatory testimony of a co-defendant, a defendant must show "(1) a bona fide need for the testimony; (2) the substance of the testimony; (3) its exculpatory nature and effect; and (4) that the co-defendant would in fact testify if the severance were granted." *United States v. Nutall*, 180 F.3d 182, 187 (5th Cir. 1999) (citing *United States v. Broussard*, 80 F.3d 1025, 1037 (5th Cir. 1996)). Rosalinda Miranda failed to show that any of her co-defendants would have in fact testified at her trial if severance were granted or that their testimony would have been exculpatory.

We conclude that the district court did not abuse its discretion in denying Rosalinda Miranda's motion for severance.

**B. Evidentiary Rulings**

Appellants challenge the district court's admission of evidence in two separate instances during trial. We review evidentiary

rulings for abuse of discretion. *See United States v. Parsee*, 178 F.3d 374, 379 (5th Cir. 1999).

**1. Drug transactions that pre-dated the indicted conspiracy**

At trial, the government introduced the testimony of Gracie Martinez, who testified that she had bought drugs from Abel Espinoza sometime "around 1989, 1990, 1991." Abel Espinoza objected, arguing

5

that the government had failed to make the necessary pretrial disclosures regarding the introduction of evidence of Abel Espinoza's prior bad acts, and that the testimony concerned events prior to the dates of the indicted conspiracy.

The district court admitted the evidence, finding that Martinez's testimony was background information and therefore not subject to Federal Rule of Evidence 404(b). In the alternative, the district court determined that the probative value of the evidence outweighed its possible prejudice and that the evidence went to intent and was thus admissible under Rule 404(b). *See United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978).

On appeal, Abel Espinoza focuses solely on whether the testimony can withstand a *Beechum* analysis, arguing that the government failed to inform him of its intention to present extrinsic evidence of his prior bad acts and that Martinez's testimony resulted in undue prejudice. Abel Espinoza also claims that the district court did not adequately articulate its *Beechum* analysis findings and that the limiting instruction was inadequate to protect his rights.

Abel Espinoza does not address the district court's decision that Martinez's testimony constituted intrinsic background information and therefore Rule 404(b)'s limits on admissibility of extrinsic acts did not apply. Evidence of other acts is intrinsic "when the evidence of the other act and the evidence of the crime

6

charged are inextricably intertwined or both acts are part of a single criminal episode or other acts were necessary preliminaries to the crime charged." *United States v. Williams*, 900 F.2d 823, 835 (5th Cir. 1990)(internal quotation marks omitted). In *United States v. Wilson*, 578 F.2d 67 (5th Cir. 1978), this court held that evidence of a drug transaction that was not part of the crime charged was nonetheless admissible as intrinsic evidence because it "was part of the background facts surrounding the commission of the crime." *Id.* at 72. The court noted that the evidence was not submitted to show the defendant's proclivity towards crime, but to complete the witness's account of his various dealings with the defendants. *Id.* We conclude that the district court did not abuse its discretion in viewing Martinez's testimony about her earlier drug purchases from Abel Espinoza as background information establishing the connection between a witness and a defendant. *United States v. Aleman*, 592 F.2d 881, 884 (5th Cir. 1979).

**2. Testimony regarding the use of code words in recorded calls**

FBI Special Agent Amado Vega-Irizarry ("Vega") testified at trial that he had been involved in the investigation of the conspiracy and in translating intercepted phone calls from Spanish to English. Vega identified various code words that callers had used and the English drug terms to which the words referred. On the third day of Vega's testimony, Hector Espinoza objected on the grounds that Vega was testifying as an expert. The district court

overruled Hector Espinoza's objections, holding that Vega was not testifying as an expert, but stated that if he were, he nonetheless had "the necessary expertise to be able to give this testimony in light of his experience in the law enforcement area."

On appeal, Hector Espinoza maintains that the district court abused its discretion because Vega's testimony "crossed the line" from lay to expert opinion testimony, citing *United States v. Griffith*, 118 F.3d 318, 321 (5th Cir. 1997) (stating that "[d]rug traffickers' jargon is a specialized body of knowledge, familiar only to those wise in the ways of the drug trade, and therefore a fit subject for expert testimony"), and that Vega was not qualified to testify as an expert on the subject of drug dealers' jargon or code words.

The government replies that Vega's testimony was admissible pursuant to Federal Rule of Evidence 701, which provides:

> [i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

We agree. Vega's extensive participation in the investigation of this conspiracy, including surveillance, undercover purchases of drugs, debriefings of cooperating witnesses familiar with the drug negotiations of the defendants, and the monitoring and translating of intercepted telephone conversations, allowed him to form opinions concerning the meaning of certain code words used in this drug ring

based on his personal perceptions.  We therefore hold that Vega's testimony was admissible pursuant to Rule 701 and that the district court did not abuse its discretion in admitting his testimony.

**C. SENTENCING ISSUES**

**1. Drug amounts attributable to defendants for sentencing purposes on the conspiracy count.**

**a. Appellants' objections and arguments.**

The PSRs state that the conspiracy was responsible for distributing 3.3 kilograms of crack cocaine, 7.2 kilograms of cocaine, and 56.32 kilograms of marijuana.  Pursuant to the Drug Equivalency Tables in the Sentencing Guidelines, these drug amounts equal 67,496.32 kilograms of marijuana for sentencing purposes.  *See* U.S.S.G. § 2D1.1.  The PSRs attributed the entire amount of drugs to each appellant, resulting in a base offense level of 38.  *See id.* § 2D1.1(c)(1).

Appellants argue that the district court erred in adopting the PSR recommendations and attributing the entire amount of drugs to each of them.  Appellants contend that the evidence at trial established that they did not join the conspiracy until late in the game or that they were minor players in the scheme.  In addition to contesting the accuracy of the factual determinations concerning drug amounts, Appellants contend that the procedure used by the district court in reaching those determinations violated their constitutional due process rights.  Appellants objected to the PSRs

and filed motions to present live testimony at their sentencing hearings.

In his written Objections to Pre-Sentence Report, Oscar Rodriguez stated, in pertinent part, "[t]he Pre-Sentence Report has calculated the base offense level too high.  The probation officer has apparently relied upon the case agent to determine the quantity of drugs to be used in the guideline calculations. . . . The determination of the quantity of drugs to be used to determine the guideline sentence is the responsibility of the probation office and the Court.  It is improper to delegate this important task to a biased case agent."

Abel Espinoza's written Objections to Pre-Sentence Report stated, "Mr. Espinoza objects to the drug quantity used to establish the base offense level.. . . Mr. Espinoza's alleged knowledge of the scope of the conspiracy and his alleged participation was very limited.  The only drug quantities attributable to Mr. Espinoza should be the 1/16th of an ounce referred to in the phone calls of May 23, 1997, and the 75 pounds of marijuana which was sold . . . . The drug quantity distributed by the conspirators in this case was not reasonably foreseeable to Mr. Espinoza and he should not be held responsible for the entire drug quantity."

Hector Espinoza objected in writing to drug quantities attributed to him in the Pre-sentence Report, alleging that "no evidence was presented at trial" to support the PSR's conclusions that he had knowledge of or was linked with a conspiracy to

distribute cocaine/cocaine base or that he coordinated how the marijuana entered the United States or that he transported marijuana. He did not challenge the conclusion that he was responsible for "13 or 12 avocados [of marijuana], whatever this quantity is determined to be."

Rosalinda Miranda's Objections to the Pre-Sentence Report challenges the drug quantities attributed to her, stating that there was no evidence produced at trial or produced by the government to support the statement that she was involved to the degree alleged in paragraph 39 of the PSR -- that is, 3.3 kilograms of crack cocaine, 7.2 kilograms of cocaine and 56.32 kilograms of marijuana.

Rigoberto Rodriguez objected succinctly to the PSR on the basis that the drug quantity used to establish his base level offense was not correct.

In addition to the Appellants' written objections to their PSRs, Appellants moved to present live testimony consisting of cross examination of case agents during the sentencing hearing to challenge the PSRs' conclusions concerning the drug amount attributable to each Appellant. The district court denied the motions, ruling that if a defendant makes only unsworn objections to the PSR but submits nothing in the way of evidence, the court is free to adopt, without further inquiry, the PSR and to consider it as reliable evidence at sentencing. On appeal, Appellants challenge that denial, arguing that this circuit's case law does not require

11

criminal defendants to submit sworn affidavits or other admissible evidence to the district court prior to sentencing in order to obtain an evidentiary hearing to challenge factual statements made in the PSR regarding drug quantities for sentencing purposes. Further, they argue that due process requires that defendants be given an opportunity to present evidence during the sentencing hearing to rebut the conclusions reached in the PSR.

### b. Standard of Review

The district court sentenced Appellants prior to the Supreme Court's recent decisions in *Jones v. United States*, 526 U.S. 227 (1999) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), as well as this court's opinions interpreting *Apprendi*, *United States v. Doggett*, 230 F.3d 160 (5th Cir. 2000), and *United States v. Meshack*, 225 F.3d 556 (5th Cir. 2000). These decisions make it clear that when the Government seeks, as it did in the case at bar, enhanced penalties based on the amount of drugs attributable to a defendant, the quantity must be stated in the indictment and submitted to a jury for a finding of proof beyond a reasonable doubt. *Doggett*, 230 F.3d at 165. The Supreme Court decided *Jones* in March 1999, while the present appeal was pending. *Apprendi* was decided on June 26, 2000, after briefing was complete, but prior to oral argument, in this case. While Appellants squarely presented a challenge to the fairness and reliability of the fact-finding process employed in determining the amount of drugs attributable to

12

each Appellant, they did not specifically object to the procedure employed by the district court on the basis that they were entitled to a jury determination of drug quantity based on a beyond-a-reasonable-doubt standard of proof, even though the objections lodged had a due process basis which is the underpinning of both *Jones* and *Apprendi*.

In light of their failure to raise the *Jones/Apprendi* objections below, we review the district court's drug-quantity-determination procedure for plain error. *See United States v. Rios-Quintero*, 204 F.3d 214, 215 (5th Cir. 2000) (reviewing for plain error even though the case the defendants relied upon was not decided at the time of trial); *see also United States v. Candelario*, -- F.3d --, 2001 WL 94607 at *8 (11th Cir., February 5, 2001) (reviewing *Apprendi* issue for plain error when defendant objected in district court to drug amount attributed to him, but did not raise a constitutional objection on *Apprendi* grounds).[1]  Plain error is defined as "(1) an error; (2) that is clear or plain; (3) that affects the defendant's substantial rights; and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings."  *United States v. Vasquez*, 216 F.3d 456, 459 (5th Cir.

---

[1]In relying on *Candelario*, we do not imply adoption of the Eleventh Circuit's characterizations of trial court objections to drug quantity determinations as either "evidentiary" or "constitutional." *Id.* at 2.  While that dichotomy may prove to be a useful and accurate way to analyze *Apprendi* issues, we leave the question for another day.

2000).

### c. Preservation of Issue for Appeal

Appellant's brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]" FED. R. APP. P. 28(a)(9)(A). Failure to satisfy the requirements of Rule 28 as to a particular issue ordinarily constitutes abandonment of the issue. *See United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992). However, the issues-not-briefed-are-waived rule is a prudential construct that requires the exercise of discretion. *Compare McGee v. Estelle*, 722 F.2d 1206 (5th Cir. 1984)(refusing to examine an issue not adequately briefed on appeal absent the possibility of injustice so grave as to warrant disregard of usual procedural rules) *with United States v. Marcello*, 423 F.2d 993 (5th Cir. 1970)(reaching the merits of defendant's contentions regarding a denial of change of venue in spite of the fact that the issue was not briefed). We may consider such an issue, particularly where substantial public interests are involved. *Hatley v. Lockhart*, 990 F.2d 1070, 1973 (8th Cir. 1993). Moreover, we must liberally construe briefs in determining what issues have been presented for appeal. *Sec. & Exch. Comm'n v. Recile*, 10 F.3d 1093 (5th Cir. 1993).

In this case, we find the following circumstances relevant to the exercise of our Rule 28 discretion. One, *Apprendi* was decided

14

after briefing and one of the defendants refers us to the new decision in his post-argument brief. Thus, it is not completely accurate to characterize the issue as waived or abandoned. Two, Appellants protested at trial and on appeal that their due process rights had been infringed by the district court's procedure for determining drug quantity. We cannot in good faith ignore *Apprendi* in a discussion of what process is due a criminal defendant who challenges a drug quantity determination. Finally, it is clear from the record in this case that Appellants were sentenced in violation of constitutional due process as interpreted by the Supreme Court in *Apprendi*. Based on these factors, we will consider whether that violation was plain error as to each of the Appellants in this case. *See United States v. Garcia*, -- F.3d --, 2001 WL 128341 (5th Cir. Feb. 15, 2001)

### d. Did the District Court Plainly Err?

To reiterate, the Supreme Court has held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 120 S. Ct. at 2362-63; *see also Jones*, 526 U.S. at 252. In *Doggett*, we applied *Apprendi* to 21 U.S.C. § 841 drug convictions. *Doggett*, 230 F.3d at 164-65. Factual determinations made by a district court, based on a preponderance of the evidence, concerning drug amounts that simply dictate a sentence within the statutorily allowed range are not

15

called into question by *Apprendi*.  *Meshack*, 225 F.3d at 576.

The first prong of plain error analysis requires that we determine whether the district court erred in assigning sentences to Appellants that exceed the relevant statutory maximums.  In the present case, the indictment charged that Appellants conspired to possess with intent to distribute in excess of 5 kilograms of cocaine, in excess of 50 grams of cocaine base and in excess of 50 kilograms of marijuana.  However, the district court instructed the jury that the "evidence in the case need not establish that the amount or quantity of controlled substance was as alleged in the count under consideration, but only that a measurable amount of that controlled substance was in fact the subject of the acts charged in that count."  Further, the jury was instructed that the government need only prove that the defendant under consideration conspired to violate the law as to one or more of the charged substances – that is, cocaine, cocaine base, *or* marijuana.  The most we can be sure that the jury found beyond a reasonable doubt is that Appellants conspired to possess with intent to distribute a measurable amount of marijuana.  The maximum sentence for the first such conviction is imprisonment of not more than 1 year, a minimum fine of $1000 or both.  21 U.S.C. §§ 846, 841(b)(4) & 844(a).  Appellants' sentences on Count One, ranging from 235 to 364 months exceed the statutory maximum sentence for the crime of conviction as this case was presented to the jury and are therefore error, thus satisfying the

16

"error" prong of the plain error analysis.

An error meets the "plain" requirement – the second prong – if it is "obvious" or "clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993). A new rule for the conduct of criminal prosecutions must be "applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987). Even assuming that the Government is correct that the district court's procedure comported with clear, controlling precedent at the time it ruled on Appellants' objections, the failure to have the jury determine drug quantity for sentencing purposes is obviously error, post-*Apprendi* and -*Doggett*. The error is therefore plain for purposes of the present appeal. *See Johnson v. United States*, 520 U.S. 461, 468 (1997) (holding that "where the law at the time of trial was settled and clearly contrary to the law at the time of appeal – it is enough that an error be 'plain' at the time of appellate consideration").

The third prong of plain error review asks whether the error affected the defendant's substantial rights. Federal Rule of Criminal Procedure 52(b) states that "[p]lain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." This step is akin to the "substantial rights" analysis employed in preserved-error cases

17

under the harmless error provisions of Rule 52(a), which provides that "[a]ny error which does not affect substantial rights shall be disregarded."[2] To affect substantial rights an error must have affected the outcome of the district court proceedings. *Olano*, 507 U.S. at 734. Because Appellants were sentenced to serve between 20-30 years of incarceration -- considerably longer than the maximum sentences available pursuant to the jury determination under the federal drug offense statute as interpreted by *Apprendi* and its progeny -- in a judicial proceeding that did not comport with constitutional due process, the error clearly affected Appellants' substantial rights.

Based on the foregoing, we hold that the procedure used by the district court to determine drug quantities attributable to each of these Appellants was plain error. We correct plain error only if we determine, in our discretion, that the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *United States v. Franks*, 46 F.3d 402, 404 (5th Cir. 1995). In exercising this discretion, we have considered whether applying the proper rule would result in significant reduction in the length of a sentence. *United States v. Williams*on, 183 F.3d 458, 464 (5th Cir. 1999).

---

[2]The Supreme Court in *Olano* noted that there is one important difference between Rule 52(a) and Rule 52(b) "substantial rights" inquiry: under 52(a) the Government bears the burden of persuasion with respect to prejudice, while under 52(b) that burden falls on the defendant. *Olano*, 507 U.S. at 734.

18

We note that the amount of drugs attributed to each defendant in the PSRs has ample support in the trial record. The District Court finding that Abel Espinoza and Rigoberto Rodriguez were not minor participants and that Hector Espinoza and Rosalinda Miranda were managers are findings properly made by the district court as part of the sentencing process, are not clearly erroneous and are legitimate to consider, post-*Apprendi*, on the question of whether or not to exercise our discretion to correct plain error. Considering the evidence in the record and the evidence available to the government should the case be retried, we conclude that the error, though plain, did not "seriously affect the fairness, integrity or public reputation of judicial proceedings." *Franks*, 46 F.3d at 404. It is highly unlikely that a jury on retrial, properly instructed post-*Apprendi*, considering the evidence available to the government, would find drug quantities attributable to each defendant to be different from the amounts attributed to each defendant in the PSRs. We therefore elect not to correct the error.

**2. Criminal History Category**

Appellant Oscar Rodriguez's PSR indicated that he had a prior conviction for unauthorized use of a motor vehicle. As such, the PSR recommended, and the district court found, that Oscar Rodriguez's Criminal History Category was II. Oscar Rodriguez contends on appeal that he was not the same Oscar Rodriguez responsible for the prior conviction. The government concedes error

19

and recognizes that Oscar Rodriguez should not have had a Criminal History Category of II. We therefore vacate Oscar Rodriguez's sentence on Count Six as well and remand for new sentencing with the appropriate Criminal History Category.

### 3. Offense Level Adjustments

Prior to sentencing, Appellants Abel Espinoza and Rigoberto Rodriguez requested a two-level decrease in their offense levels based on their minor participation in the conspiracy, pursuant to U.S.S.G. § 3B1.2(b). The district court refused to grant either Appellant a decrease and adopted the PSRs' recommendation regarding offense levels. The district court also adopted the PSRs' finding that Appellants Hector Espinoza and Rosalinda Miranda were managers of the conspiracy as defined by U.S.S.G. § 3B1.1(b) and the PSRs' recommendation that their base offense levels be increased by three.

We review a district court's determination that a defendant qualifies for an offense level adjustment for an aggravating or mitigating role in the offense for clear error. *United States v. Valencia*, 44 F.3d 269, 272 (5th Cir. 1995). A district court's factual findings are not clearly erroneous if they are "plausible in light of the record as a whole." *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998). A party seeking an adjustment in the base level of an offense bears the burden of proving by a preponderance of the evidence that the adjustment is warranted. *See United States v. Patterson*, 962 F.2d 409, 414 (5th Cir. 1992). The sentencing

court is free to consider all relevant evidence, even inadmissible evidence, in determining whether an adjustment is warranted so long as the evidence has a "sufficient indicia of reliability to support its probable accuracy." *Id.*

In this case, the district court did not make independent findings concerning offense levels, but adopted the PSRs. A review of the record reveals sufficient facts to support a finding that Abel Espinoza and Rigoberto Rodriguez were average, not minor participants and that Rosalinda Miranda and Hector Espinoza were managers of the conspiracy. A minor participant adjustment is not appropriate simply because a defendant does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity. *United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir. 1991). The evidence supports a finding that Abel Espinoza and Rigoberto Rodriguez were each actively involved in the conspiracy as distributors who sold drugs to individual users. The district court did not err in refusing to afford them minor participant status.

To determine whether a defendant is appropriately termed a manager, the court considers factors such as the exercise of decision-making authority, nature of participation in commission of the offense, recruitment of accomplices, claimed right to a larger share of the profits, degree of participation in planning or

organizing the offense, nature and scope of the illegal activity and degree of control and authority exercised over others.  U.S.S.G. § 3B1.1 Application Note 4.  According to investigative reports cited in the PSRs, Hector Espinoza managed the conspiracy's marijuana shipments from Mexico to Texas, while Rosalinda Miranda controlled the sales of illegal drugs at three different locations.  We find no clear error in the district court's conclusion that Hector Espinoza and Rosalinda Miranda were managers.

## CONCLUSION

Based on the foregoing, we affirm all of Appellants' convictions and the sentences of all Appellants except Oscar Rodriguez, whose sentence we vacate and remand for re-sentencing.

AFFIRMED in part, VACATED in part, and REMANDED.

KING, Chief Judge, concurring in part and concurring in the judgment:

I concur in the judgment, together with Parts A and B of the opinion, insofar as it affirms the convictions and sentences of Appellants. However, I respectfully disagree with the majority's decision (set out in Part C.1 of the opinion) to raise sua sponte an Apprendi issue that was neither preserved below nor raised on appeal to this court. It is error, and unfortunate as well, to embark on that path. If we limited ourselves to the issues raised in the district court and in Appellants' briefs, we would do the required, and routine, analysis of the adequacy of the evidence supporting Appellants' sentences in affirming all sentences (except for the sentence of Oscar Rodriguez, which the government concedes should be vacated).

First, Appellants did not raise the constitutional concern of Apprendi in any way, shape, or form. The Supreme Court defined the issue in Apprendi as "whether [the defendant] had a constitutional right to have a jury [make a finding] on the basis of proof beyond a reasonable doubt." Apprendi v. New Jersey, 120 S. Ct. 2348, 2355 (2000). Appellants have never argued that the jury must find certain aspects of their case beyond a reasonable doubt.[3] Their

---

[3] The majority states that one of the Appellants refers to Apprendi in a post-argument brief. In a letter brief responding to a brief that we asked the government to file providing record support for each Appellant's sentence, one of the Appellants, Abel Espinoza, actually represented Apprendi as having only "tangential effects, if any," on this case. He also recognized the policy underlying the preservation-of-issues rule — that the government

23

garden-variety Sentencing Guidelines challenges all go toward the government's failure to prove by a preponderance of the evidence the amount of the drugs attributed to them (and toward the district court's decision not to permit them to cross-examine case agents during sentencing so that they could demonstrate that the government failed to carry its burden).  As the briefs do not discuss Apprendi, we do not have the benefit of any party's views on the matter.[4]

The majority raises the Apprendi issue sua sponte, however, stating that the preservation-of-issues rule is subject to the discretion of the court.  In Silber v. United States, the Supreme Court stated:  "While ordinarily we do not take note of errors not called to the attention of the Court of Appeals nor properly raised here, that rule is not without exception."  370 U.S. 717, 717-18

---

would not have an opportunity to respond — and stated that he did not wish to "sand bag" the government.  See United States v. Garcia Abrego, 141 F.3d 142, 168 n.14 (5th Cir.) (stating that appellant could not raise arguments for the first time in post-oral argument letter brief, which, pursuant to court instructions, was to address only adequacy of record support for arguments that had already been made), cert. denied, 525 U.S. 878 (1998).  Rather, he cited Apprendi for his contention that the district court's "sentencing policy . . . may well merit increased scrutiny in light of the High Court's [holding]."

[4]  The majority cites Hatley v. Lockhart, 990 F.2d 1070, 1073 (8th Cir. 1993), to support its view that it is proper to exercise our discretion in this case to address an issue not raised by any party.  However, I note that in Hatley, the Court of Appeals for the Eighth Circuit recognized the problematic issue and requested supplemental briefing, thus providing all parties with the opportunity to provide input on the matter.  See id.  I am reluctant to express any opinion on the correctness of the majority's analysis of the Apprendi error because we have had no briefing whatsoever on that issue.

24

(1962). The Court then narrowly defined the contours of this exception: "In exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, <u>notice</u> errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." <u>Id.</u> at 718 (emphasis added) (internal quotations omitted) (quoting <u>United States v. Atkinson</u>, 297 U.S. 157, 160 (1936)).[5] We have also recognized that we have the power to raise <u>sua sponte</u> an issue and examine it for plain error. <u>See, e.g.</u>, <u>United States v. Pineda-Ortuno</u>, 952 F.2d 98, 105 (5th Cir.) ("Where plain error is apparent, the issue may be raised <u>sua sponte</u> by this court even though it is not assigned or specified." (citing <u>Silber</u>)), <u>cert. denied</u>, 504 U.S. 928 (1992).

Thus, I whole-heartedly agree that the preservation-of-issues rule is not without exception, albeit limited. However, I have been unable to find a case in which a court <u>sua sponte</u> raised an issue, but then afforded no relief.[6] The core idea underlying <u>sua sponte</u>

---

[5] I note that, in <u>Silber</u>, the defendant <u>did</u> raise the issue in the trial court, but then failed to raise it at all in the appellate court or the Supreme Court.

[6] The majority cites <u>United States v. Marcello</u>, 423 F.2d 993, 1006 (5th Cir.), <u>cert. denied</u>, 398 U.S. 959 (1970), in which the court stated that there was no error in the trial court's denial of the defendant's second motion for a change of venue. The court made this determination despite the fact that the issue was not briefed. In <u>Marcello</u>, the defendant had raised and discussed a similar issue regarding the first motion for a change of venue. <u>See</u> <u>id.</u> at 1001-06. Further, it is not clear whether this topic

consideration is to correct some terrible error that resulted in a gross miscarriage of justice.  See McGee v. Estelle, 722 F.2d 1206, 1213 (5th Cir. 1984) (refusing to examine issues not raised "absent the possibility of injustice so grave as to warrant disregard of usual procedural rules").  It makes no sense to cast aside a fundamental rule of appellate review, regarding preservation of issues, and address an error, but then conclude that the error is not so egregious that it impairs the integrity of the judiciary. While courts are not always entirely precise in terminology, there does not appear to be a distinction between "noticing" errors and "correcting" errors.  In Johnson v. United States, the Supreme Court indicated as such by using the term "notice" in its analysis of the United States v. Olano, 507 U.S. 725 (1993), plain error standard of review:  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."  520 U.S. 461, 467 (1997) (emphasis added) (second alteration in original) (internal quotations and citations omitted); see also id. at 470 (using the terms "correct" and "notice" interchangeably).  Therefore, when

---

was perhaps raised at oral argument.

The majority also cites Securities & Exchange Commission v. Recile, 10 F.3d 1093, 1096 (5th Cir. 1993), for the proposition that we must liberally construe briefs in determining what issues have been presented for appeal.  However, the Recile court continued by stating that "issues not raised at all are waived." Id. (emphasis added).

courts do _sua sponte_ evoke plain error review, they have generally done so to correct grievous mistakes.  See, e.g., _Silber_, 370 U.S. at 717; _Pineda-Ortuno_, 952 F.2d at 105; _cf._ _Petrocelli v. Angelone_, 242 F.3d 867, 875-76 (9th Cir. 2001).

As the majority correctly points out, the evidence of the drug quantities attributable to Appellants in this case was overwhelming and another trial would likely reach the same result.  Therefore, there is no grave injustice that necessitates our reaching past the preservation-of-issues rule and _sua sponte_ conducting plain error review.  A routine analysis of the sufficiency of the evidence is all that is required to dispose of Appellants' claims in this regard.